GEORGE J. WOODS, APPELLEE, V CLEMENT L. HART, APPELLANT.

FILED FEBRUARY 3, 1897. No. 6974.

1. **Conflicting Evidence:** REVIEW. A finding on conflicting evidence will not be disturbed unless manifestly wrong.

2. **Specific Performance:** EVIDENCE. Evidence *held* to sustain findings in an action for the specific enforcement of a contract for the exchange of property.

3. **Fraud:** BURDEN OF PROOF. The burden of proving fraud or misrepresentation in the making of a contract is upon the party alleging it.

4. **Contracts:** EXCLUSIVE AGENCY. A stipulation in a contract giving a person the exclusive agency for the sale of the principal's property for an indefinite period does not render such contract void as being against public policy.

5. **Principal and Agent:** REVOCATION OF CONTRACT. The principal could, at any time before sale, revoke the agent's authority, even though the instrument expressly stipulated that the agent's power to sell should be exclusive.

6. **Exchange of Property:** DESCRIPTION. A contract for the exchange of property is not void for indefiniteness of description where the description is such as, by the aid of evidence *aliunde*, to enable the property to be identified.

7. **Conveyances:** CONFLICTING DESCRIPTIONS OF PROPERTY. Where a contract contains two descriptions of the property to be conveyed, one correct and the other false in fact, the latter should be rejected as surplusage.

APPEAL from the district court of Douglas county. Heard below before WALTON, J. *Modified and affirmed.*

36

*F. W. Fitch*, for appellant:

Where a contract gives the benefit entirely to one person, with the exclusive sale, barter, trade, or handling thereof, it is against public policy. (*Moses v. Scott*, 4 So. Rep. [Ala.], 742; *Baggott v. Sawyer*, 25 S. Car., 405; *Boyle v. Adams*, 52 N. W. Rep. [Minn.], 860.)

A contract formed to establish and maintain a uniform rate of charge and prevent competition in the sale of an article or property, where the entire benefit inures to one of the parties only, is illegal and void as being in restraint of trade. (*More v. Bennett*, 29 N. E. Rep. [Ill.], 888; *Strait v. National Harrow Co.*, 18 N. Y. Supp., 224; *Tode v. Gross*, 127 N. Y., 480; *Chaplin v. Brown*, 48 N. W. Rep. [Ia.], 1074; *Western Wooden Ware Ass'n v. Starkey*, 84 Mich., 76.)

*F. H. Woods*, contra.

NORVAL, J.

This was an action by George J. Woods to enforce the specific performance of an alleged contract for the exchange of real estate for live stock, of which the following is a copy:

"Article of agreement between George J. Woods, of the first part, and Dr. C. L. Hart, of the second part:

"Said Woods and Hart do this day make the following trade, subject, however, to title: Said Woods agrees to give said Hart lots eight (8), nine (9), ten (10), eleven (11), twelve (12), thirteen (13), and fourteen (14), all in block seven (7) of Battle Creek Addition to College View, Lancaster county, Nebraska; said lots to be transferred to said Hart by good and sufficient warranty deed, and clear of all incumbrances of any nature. (Said lots being the ones shown Hart by me.) In consideration of the above described lots, said Hart is to give said Woods the following described cattle:

| | |
|---|---|
| Eight head of registered Holstein bulls at $50 | $400 |
| Four head of registered Holstein cows at $75 | 300 |
| Twenty head of grade Holstein cows and heifers at $40 | 800 |
| | $1,500 |

Being the same cattle picked out by said Woods on June 27, '93; said Hart agreeing to keep said cattle, and in as good condition, for two months from date. He is also to furnish transfers on all registered animals as the Holstein Herd Book demands. He is also to give said Woods a difference of fourteen hundred, to be secured on the above described lots, and to draw seven per cent interest, and to be payable on or before two years from date. Another express consideration of this agreement is that said Woods is to have the exclusive agency for the sale of the lots. This trade is this day made and agreed to by both parties as herein written, all papers to be transferred on or before two weeks from date.

"GEORGE J. WOODS.

"C. L. HART.

"Witness:

"A. R. BOYD.

"Signed this 27th day of Jan., A. D. 1893.'

The plaintiff alleges in his petition the execution of the contract by himself and the defendant, the failure of the latter to comply with the terms thereof on his part, and that the former has been ready to carry out and fulfill each and all the conditions therein on his part to be kept. He also brought into court his warranty deed and abstract of the lots described in the contract, and tenders the same to the defendant, upon his executing a mortgage on the premises for the security of the $1,500 and the delivery to the plaintiff of the cattle mentioned in said contract. The defendant, for answer, denies that he ever made, entered into, or signed the contract declared on,

and pleads other defenses which will not now be stated. The court found generally for the plaintiff, and a decree was entered that defendant should perform specifically the contract within twenty days, and that in default thereof plaintiff have judgment against Hart for the sum of $1,500, with interest thereon at seven per cent from January 27, 1893. Defendant appeals.

The findings and decree are assailed as not being sustained by the evidence. Attention will first be given to the question, was there a contract between the parties? Stated in a different form, did the defendant sign the alleged agreement which it is sought to have enforced in this case? The record discloses that plaintiff, George J. Woods, resided in the city of Lincoln, and that the defendant, Clement L. Hart, was a physician residing in the city of Omaha, and owned a farm in Hall county, near Cairo, stocked with cattle; that on the 25th day of January, 1893, Hart went to Lincoln to employ Colonel Woods, plaintiff's father, to sell some cattle for defendant; that the colonel not being at home, Hart explained his business to George J. Woods, informing him of the kind and number of cattle he had for sale, and during the conversation the latter made a proposition to exchange real estate for the former's cattle. The parties do not agree in what was said, but they both unite in saying that the subject of trading real estate for cattle was discussed; that the defendant went with plaintiff to College View, a suburb of the city of Lincoln, and looked at some lots in that vicinity which Woods claimed to own and proffered to exchange. That the same day Hart took the train for Grand Island, where he remained over night, going out to Cairo in the forenoon of January 26. On the same day Woods went to Cairo to look at defendant's cattle, arriving so late that, on account of darkness, no satisfactory examination could be had, although an attempt to do so was made. The next morning both parties went to see the cattle, when those involved in this litigation were selected and picked out of defendant's herd. Mr. Hart

testified that, owing to his physical condition at that time, he has no distinct recollection of the conversation which occurred between them on the morning of January 27, and further, that he never signed the paper alleged to be the contract in question, and never saw the same or knew the contents thereof until this suit was instituted. Lewis Schwalerberg and other witnesses called by the defendant, and who were familiar with his handwriting and signature, testified on the trial that Hart's signature to the contract was not genuine. The testimony of the plaintiff is to the effect that in pursuance of an appointment made with the defendant, he went to Mr. Hart's farm near Cairo on January 26 to look over the cattle and to agree upon terms of exchange; that on arriving at Cairo, Woods employed one A. R. Boyd, a liveryman, to drive him to defendant's place; that on reaching the farm plaintiff and defendant, in the presence of Boyd, Eli Hart, a brother of defendant, and another person, looked over the cattle and agreed upon prices; that plaintiff, on his return to Cairo, was to prepare the contract in duplicate and return the next morning, when it was to be executed and the cattle sorted out; that plaintiff, as requested, drew up the agreement, and returned the next morning with Mr. Boyd, when the cattle were selected and driven into a corral, and that after this was done plaintiff and defendant went into the barn of the latter, where both signed the contract with a lead pencil, in the presence of Mr. Boyd. The testimony of plaintiff relating to the selection of the cattle and to the signing of the contract is in every essential part corroborated by the deposition of Mr. Hart, which is set forth in the bill of exceptions. It was also shown that a few days after January 27 the defendant wrote and sent to the plaintiff the following letter:

"CAIRO, HALL CO., NEBR., 7, 93.

"*George J. Woods, Esq., Lincoln, Nebr.*—DEAR SIR: I am giving all my time to the cattle, fixing up the sheds, etc. Shall do all in my power to keep the cattle in good condi-

tion as the severity of the weather, and neglect of the cattle before I came, will allow.

"I do not want a deed of lots, only land contract for reasons I will give you when I see you. I shall not be able to get there in two weeks with (?) leaving the stock to the tender mercies of that boy, which I dare not do. I have rented the farm to what seems to be a good man, and expect him on between now and Mch. 1st. When he comes I shall not have to depend upon such a boy.

"When I come through Lincoln, I will call upon you.

"Truly yours,                          C. L. HART."

The foregoing letter is unexplainable upon any other hypothesis than that some sort of a contract or agreement existed between Woods and Hart relating to the exchange of lots for cattle, and in view of this letter, and the evidence adduced on behalf of the plaintiff already mentioned, it is not surprising that the trial court found the contract set forth in the petition was entered into by the defendant as alleged. Certainly such finding is not only sustained by the evidence, but by the clear preponderance thereof.

Another defense interposed is that the contract was entered into through the fraud and misrepresentation of the plaintiff as to the location of the lots; hence a court of equity will not decree specific performance. This defense is inconsistent with the one just noticed, and must be regarded as an admission that the defendant executed the contract. Woods and Hart are the sole persons who have any knowledge whether the lots described in the contract were the ones shown by the former to the latter on January 25, the day the negotiations for the exchange of properties first commenced, and their testimony on the subject fails to harmonize. The defendant testified that he never saw the lots mentioned in the contract before the trade was made; that they are not situated in College View proper, but in Battle Creek Addition thereto, and located a considerable distance east of the college buildings; that the lots, seven in number, which Woods showed

him on that occasion, and offered to trade for the cattle, were situated in College View proper, about a quarter of a mile west or northwest of the college buildings, and about on a level therewith. We reproduce from the bill of exceptions the following from the testimony of George J. Woods, the plaintiff:

Q. What property was it you showed Dr. Hart?

A. Lots 8, 9, 10, 11, 12, 13, and 14, in block 7, Battle Creek Addition to College View, Lancaster county, Nebraska.

Q. State what, if any, other property besides that mentioned in the contract you showed Hart at the time he was in Lincoln, if any at all.

A. I did not show him any.

Q. Did you offer to trade him any other property?

A. No, sir.

The burden was upon the defendant to establish by the preponderance of the testimony his charge of misrepresentation and fraud as regards the location of the property which was to be exchanged for the cattle. In our view, he did not establish this defense, but the court was fully warranted in giving credence to the direct and positive testimony of the plaintiff above quoted, especially in view of the fact that the defendant under oath denied his own signature to the contract which is made the foundation of this suit.

Another reason urged for refusing the enforcement of the contract is the inadequacy of consideration. It will be observed that in the trade the lots were put in at $2,900. The testimony bearing upon the question of the value of the lots at the time of the making of the contract was given by real estate agents, and, as might have been expected, was of the most conflicting character. The values placed upon the lots by the defendant's witnesses are as follows: F. W. Brown, $50 each; A. E. Moeller, $200 a lot; A. N. Wycoff, $100 apiece; F. L. Dunn, from $200 per lot to $3,000 for the seven. The average valuation placed on the lots by plaintiff's wit-

nesses was over $400 apiece. The consideration for the contract to be furnished by Woods was not unjust or inadequate, but, on the contrary, if the testimony of his witnesses is to be given credence, the defendant obtained an advantage over plaintiff in the bargain as made. It is a well recognized rule that the finding of the trial court, when based upon conflicting evidence, will not be disturbed by the reviewing court, and the doctrine will be adhered to and applied in the case under consideration.

It is argued that specific performance should be refused, because the defendant did not make a sale of the lots in ninety days from the date of the trade. The contract declared on contains no such stipulation or guaranty. It is true a verbal agreement having such a provision is pleaded by the defendant in his answer, and his testimony tended to support the averment; but the trial court found against the existence of such a contract, and such finding is not without support in the testimony; hence, plaintiff was not required to effect a sale of the lots in order to entitle him to a specific enforcement of the contract against Dr. Hart. Moreover, it does not appear that the latter ever advised the plaintiff of the terms upon which the lots were to be sold.

The next contention is that the contract is void as being against public policy, in that it provided that "Woods should have the exclusive agency for the sale of the lots." Such provision did not, in the least, operate against the interests of the public, nor yet against those of the defendant, since the appointment as agent was not for a fixed or definite period. The power or right of revocation of the agency remained in Hart, and he could have exercised the same at any time, or sold the property himself. (*Chamber v. Seary*, 73 Ala., 372.) Not one of the cases cited by appellant supports the doctrine that the clause under consideration renders the contract void. Suffice it to say that they merely held that contracts in restraint of trade, or those made for the purpose of preventing competition at auction and other public sales, are contrary to public policy, and therefore void.

Complaint is made that the cattle which the decree requires the defendant to deliver are not the same as designated in the contract. In the decree they are described as "four (4) head of registered Holstein bulls, five (5) head of registered Holstein cows, and twenty-five (25) head of grade Holstein cows and heifers," which states the number of each class differently from that given in the contract; and hence it is claimed that the decree has made a new and different contract for the parties. This objection would be unanswerable if the number and class constituted the only description of the cattle contained in the contract. But such is not the case. The stock intended to be exchanged is expressly designated in the written agreement as "being the same cattle picked out by said Woods on January 27, 1893." This description alone would have been sufficient, for the particular cattle to which the contract was intended to apply could be established by the aid of extrinsic testimony. There was no uncertainty in the description, for that is certain which is capable of being made so by evidence *aliunde.* The authorities agree that parol evidence is admissible to identify the subject of a written contract. (Bishop, Contracts, sec. 376, and cases cited in notes.) The undisputed testimony is to the effect that on January 27, 1893, the parties to the contract selected from the defendant's herd nine registered Holsteins, four being bulls and five heifers, and also twenty-five graded Holstein cows and heifers, and that the entire thirty-four head were put into an adjacent pen or corral, and set apart as the cattle to be exchanged for the lots. So that the cattle mentioned in the decree were the ones actually picked out and selected, and therefore not different from those covered by the contract. That part of the description of the cattle in the contract which gave the number of each kind or class was false, and under the rule laid down in *Hubermann v. Evans,* 46 Neb., 784, should be rejected, since the remainder of the description is sufficient to enable the cattle to be identified.

The only substantial error in the record is the finding that the plaintiff should have judgment for $1,500, with interest thereon from January 27, 1893, in case defendant failed to deliver the cattle within the time mentioned in the decree. The cattle were to be retained by Hart for sixty days from the making of the contract. It was unjust to allow interest from the date of the contract. It should have been computed from March 27, 1893, the period fixed for delivery. The decree is accordingly modified, and as thus modified is affirmed.

DECREE MODIFIED.