WESLEY H. MADDOX, APPELLANT, v. W. A. HARDING, APPELLEE.

FILED APRIL 20, 1912. No. 17,046.

1. **Brokers: SALE OF LAND: RIGHT TO COMMISSION.** Where the owner of real estate contracts with an agent for its sale, and no limit of time is fixed by the parties, the agent's authority may be revoked at any time; but, if, at the time of the revocation, the agent had negotiations for a sale pending, with a party whom he had introduced to the owner, and the owner had himself participated in such negotiations, and afterward the negotiations are continued or within a few days renewed and consummated by the owner, in person or through another, the agent is entitled to his commission.

2. ———: ———: ———. And if during such negotiations the agent of the seller is also the agent of the proposed buyer for the sale of other real estate owned by him, which it is proposed shall be accepted by the seller as part payment, and both seller and buyer know of such dual agency, and with such knowledge continue to negotiate with each other through such agent, and a deal is finally consummated, the fact of such dual agency cannot be interposed by either as a defense in an action by such agent for his stipulated compensation.

3. Evidence examined, and referred to in the opinion, *held* sufficient to require a submission to the jury.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Reversed.*

*James E. Leyda,* for appellant.

*Reavis & Reavis* and *H. N. Mattley, contra.*

FAWCETT, J.

Plaintiff brought suit in the district court for Richardson county, to recover commission upon the sale of a farm. At the conclusion of the trial the court directed a verdict in favor of the defendant, upon which judgment was rendered, and plaintiff appeals.

The petition alleges that on September 19, 1908, plaintiff entered into a written contract with defendant to act as agent of defendant in the sale of certain land in Richardson county. A copy of the contract is attached to the petition. The contract described the land and the amount which defendant was to pay as commission in the event that plaintiff furnished a buyer or was instrumental in any manner in selling or transferring the property. The petition further alleges that the terms of the contract were afterwards modified by a letter, making the selling price of the land $17,000; that later, at the office of plaintiff, on or about December 31, 1908, by mutual agreement between defendant and one Poteet, the defendant and Poteet agreed upon terms of the sale, whereby defendant was to receive $14,500 in cash and notes, and a piece of town property of the valuation of $5,500; that, acting under said contract, at the suggestions and directions of defendant, plaintiff procured the purchaser, but defendant refused to convey, and attempted to withdraw the land from the market; that a few days thereafter defendant himself sold and conveyed the land in question to the said Poteet; that plaintiff first introduced Poteet to defendant; that plaintiff was instrumental in bringing about the sale and transfer of defendant's farm, and is entitled to his commission; that defendant's sale of the farm to Poteet was for the sum of $20,000. The answer admits the execution of the contract, the withdrawal of the

land from the market, and denies generally the other allegations in the petition. As a further defense, it alleges that whatever services were performed by plaintiff were at the special instance and request of Poteet; that plaintiff, for an alleged service claimed by him to have been performed in the sale of said land, charged Poteet $100, which was paid by him, and that plaintiff was not acting for defendant in the sale of the land; that the relationship existing between plaintiff and Poteet, whereby plaintiff was acting as the agent for Poteet, was unknown to defendant. The reply is a general denial.

The evidence shows the making of the contract as alleged; that defendant and Poteet were introduced to each other by plaintiff; that plaintiff sent several other parties to look at the farm, and continued negotiations with Poteet and defendant up to the 31st of December; that he had correspondence with defendant while defendant was in California and also while he was in Iowa; that early in December he telephoned defendant at Red Oak, Iowa; that defendant soon afterwards visited Falls City and again met Poteet at plaintiff's office; that the matter drifted along, plaintiff having talked to defendant and Poteet every few days during the month of December until the 31st of that month, when all the parties were in plaintiff's office and practically agreed on the terms of sale, for $20,000; $14,500 cash, and city property in Falls City, known as the Lindell Hotel, for the other $5,500; that the next day plaintiff drew up a memorandum of what he understood to be the terms of that agreement, which was signed by Poteet and by plaintiff as agent for defendant; that when he next saw defendant and showed him the memorandum defendant said, "to wait a minute that he wanted to go and see somebody." This occurred on the morning of January 2. That in the afternoon plaintiff received by registered mail the following notice: "The New National Hotel, Falls City, Nebr., Jan. 2, 1908 (1909). W. H. Maddox, Falls City, Nebr. Dear Sir: This is to notify you that I withdraw from the market

my 268 acres of land situated in sec. 35 & 36, Richardson Co., Nebr., known as the Randall farm, now listed with you. Yours truly, W. A. Harding." Defendant attempts to justify the discharge of plaintiff, and his alleged withdrawal of the land from the market, upon the ground that he learned on January 2 that Poteet had paid plaintiff $100 for his services in connection with the exchange of the hotel property. Thirteen days after defendant wrote plaintiff the letter of January 2, stating that the land was withdrawn from the market, he sold the property to Poteet for $20,000, conducting his negotiations with another real estate firm, known as Whitaker Brothers.

The rule invoked by defendant, and the one under which the court evidently directed a verdict in his favor, is that of dual employment. It is contended that because plaintiff was acting for Poteet as to the hotel property, and received pay from him for what he did in relation to that matter, he cannot now recover anything from defendant. There is no trouble with the rule contended for, when rightly stated and understood. It is that a real estate agent, acting for both parties in effecting an exchange of their property, can recover compensation from neither unless the agent's double employment was known and assented to by both of said contracting parties, or, more correctly speaking, by the one sought to be charged with such compensation. The simple question in this case is, did defendant, during the time he was negotiating with plaintiff and Poteet for the exchange of these properties, know that plaintiff was representing Poteet as to the hotel property, and did he assent thereto? If he did not know of it until January 2, at the time he wrote the letter above set out, his action in writing that letter and discharging plaintiff would have been justifiable. If he did know of the relations existing between plaintiff and Poteet, while the negotiations between the three of them were going on, and continued those negotiations from time to time after such knowledge, then his assent to such relations will be conclusively presumed.

Defendant testified that plaintiff introduced him to Poteet; that he and plaintiff and Poteet were carrying on negotiations looking to a sale of the farm; that he never at any time consented to accept the Lindell Hotel as a part consideration for the sale of the farm; that when shown the contract which plaintiff had drawn up with Poteet he refused to sign it; "and that that afternoon, after having talked with Mr. Poteet, he notified Mr. Maddox and the other real estate agents with whom the land was listed that it was taken off the market." In the light of what follows, this testimony is significant. Defendant was then examined as follows, in relation to the sale of the land which he finally made through Whitaker Brothers: "Q. You may state whether as a part of the consideration you took the Lindell Hotel. A. Well, the hotel was never deeded to me. I never had it in my name. Q. Just tell the facts. A. They had the hotel sold for a certain figure to balance up the deal. I got some cash and notes that were short time notes and well secured that I could turn to cash and did turn them right away. Q. When, if at any time during the negotiations between yourself and Mr. Poteet in which Mr. Maddox was concerned, did you learn that Mr. Poteet was paying Mr. Maddox for effecting the sale between you and Poteet? A. I learned that on the 2d day of January. Q. After learning that, what, if anything, did you do with reference to terminating your agency with Maddox? A. I notified him I withdrew it from the market." On cross-examination we have the following: "Q. You made up your mind you wouldn't sell? A. Yes, sir. Q. How soon after did you change your mind? A. Not until after Whitaker Brothers came to me. Q. The transaction was that Whitakers would take the hotel and Poteet would take the farm? A. I don't know who got the hotel, whether Whitakers or who got it. Q. Who paid you the money? A. For the hotel? Q. Yes. A. Whitaker Brothers gave me a check. Q. For the price of the hotel, less so much commission, didn't they? A. Yes. Q. Now,

you knew all the time you were negotiating with Mr. Maddox when you were in the office day after day, you knew Mr. Maddox had the hotel for sale or trade? A. Yes. Q. You knew that? A. Yes." Poteet was called as a witness for defendant, and on cross-examination testified that in purchasing the farm from defendant he turned in the Lindell Hotel as a part of the consideration; that the deed for the hotel was made to Whitaker, and Whitaker paid the money for the hotel to defendant. Bert Whitaker was called as a witness for defendant, and testified that he conducted the sale between plaintiff and defendant; that he now owns the Lindell Hotel; that the deed came to him from Poteet; that he took the hotel in at $4,500, and that he paid the consideration therefor to defendant. In the light of this record, it is clear that the district court erred in withdrawing the case from the jury and directing a verdict for defendant. There is no theory upon which defendant's conduct can be justified. He had obtained the services of plaintiff in the effort to sell his farm, and he actually sold the farm to the customer produced and introduced to him by plaintiff. He knew, by his own admission, during all the time negotiations were going on, that plaintiff was representing Poteet, so far as the hotel property was concerned. It is therefore clear that there was no fraudulent or improper concealment on the part of plaintiff in relation thereto, but that his relations with Poteet were fully understood. The fact that defendant did not learn until January 2 the amount which Poteet was to pay plaintiff for his services in connection with the hotel is, under the circumstances of this case, entirely immaterial. He knew that plaintiff was representing Poteet in that regard, and common knowledge and every-day experience would have told him that plaintiff expected remuneration from Poteet therefor. We are unable to discover any deceit or improper practice on the part of plaintiff. The letter of January 2, claiming that the land was withdrawn from the market, looks like a mere subterfuge. That the at-

tempted withdrawal of the land from the market should not, under the circumstances shown, defeat plaintiff's right to recover his commission, is well shown in *Smith v. Anderson,* 2 Idaho, 495, *Gottschalk v. Jennings,* 1 La. Ann. 5, and *Knox v. Parker,* 2 Wash. 34.

Plaintiff was clearly entitled to go to the jury upon the evidence introduced, and, for the refusal of the court to permit him to do so, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.