LOUIS C. STAATS, APPELLANT, v. HENRY MANGELSEN, APPELLEE.

FILED NOVEMBER 10, 1920. No. 21128.

1. **Principal and Agent:** REVOCATION OF AUTHORITY: LIABILITY OF PRINCIPAL. "Where an agent is vested with a mere naked authority not coupled with an interest, his principal may revoke that authority before performance; but, if the agent has rendered services and incurred expense in the course of his employment before his authority was canceled, the principal will be liable therefor, unless it is otherwise provided by the terms of their agreement." *Hallstead v. Perrigo*, 87 Neb. 128.

2. **Brokers:** SALE OF LAND: RIGHT TO COMMISSION. Even though a real estate broker's contract, not coupled with an interest, gives him the exclusive agency to sell the land, the owner of the land is not thereby precluded from selling it himself without the aid or knowledge of the broker; and, while a sale by the owner necessarily operates to revoke the agent's power to sell, it does not, under such a contract as in this case, annul the agreement for compensation. *Hallstead v. Perrigo, supra*, and *Maddox v. Harding*, 91 Neb. 292, explained and followed.

3. ———: ———: ———. In such case, if the broker, before he has notice or knowledge of the sale by the owner, has performed his part of the contract in good faith by securing a purchaser to buy the land on the terms fixed by the owner, the owner is liable to the broker for the compensation stipulated in the contract.

APPEAL from the district court for Merrick county: FREDERICK W. BUTTON, JUDGE. *Reversed.*

*John C. Martin,* for appellant.

*Elmer E. Ross, contra.*

CAIN, C.

Louis C. Staats brought this action to recover $800 for the breach by the defendant landowner of a real estate

broker's contract, which plaintiff alleged he had fully performed. Omitting descriptive matter not now material, the contract is as follows: "9/28 (1917). I hereby employ L. C. Staats sole and exclusive agent to sell or exchange my farm or ranch of 160 acres. Legal numbers S. W. $\frac{1}{4}$, section 14, township 15, range 5. * * * Price, $125 per acre. Cash, $12,000, balance 5 years, Int. 5%. Commission to be $800. Agreement to run 3 months from date and thereafter until withdrawn from the market. I also agree to give warranty deed and abstract showing clear title to above-described land. I hereby authorize and empower my agents above named to make, execute and deliver in my name such written contract as they may deem necessary to close a sale of the premises on the foregoing terms with any purchaser thereof. Owner: H. Mangelsen. Agent: L. C. Staats. Witness: Geo. E. Bockes. $2,000 to be paid on contract till March 1st."

Trial was had to court and jury. At the close of plaintiff's evidence, the defendant moved the court to direct a verdict in his favor of no cause of action. The court overruled this motion, and, in doing so, stated to defendant's counsel that, if the case were submitted on the evidence then received, and the defendant would rest his case, the court would render judgment in favor of the plaintiff for $56 only. Thereupon the defendant rested his case, and the court directed a verdict in favor of plaintiff for $56, and both parties excepted to the ruling. Each party filed a motion for a new trial, and both motions were overruled. Each party excepted to the ruling, and was allowed the usual time in which to prepare and serve a bill of exceptions. Plaintiff appeals, and asks that judgment be rendered in his favor in this court for $800 and interest and costs. Defendant filed no formal cross-appeal, but sets out formal assignments of error in his brief, and asks that the judgment against defendant for $56 be reversed, "but that the action of the lower court in otherwise directing the verdict against the plaintiff should be sustained."

Plaintiff contends that the trial court erred in directing the verdict for only $56, claiming that it should have been for $800. Defendant urges that the evidence was not sufficient to warrant the court in directing a verdict against him for any amount. These contentions require an examination of the evidence, which may be briefly stated as follows: The plaintiff, Louis C. Staats, had been in the real estate business for nine years with his office at Central City, and George E. Bockes, who signed the contract as witness, was his employee assisting to carry on the business. The defendant, Mangelsen, was the owner of the land described. On September 28, 1917, the broker's contract hereinbefore set out was entered into. Thereafter, and before December 28 of that year, plaintiff showed defendant's farm to different people whom he regarded as possible purchasers, using hired automobiles part of the time and his own car part of the time for that purpose. On January 1, 1918, the plaintiff, accompained by Mr. Bockes, took Dr. E. H. Nauman, of Columbus, Nebraska, out to defendant's farm, showed it to him, and discussed a sale of it to Nauman. The defendant was present and participated in that discussion. No agreement was made at that time, and Dr. Nauman went home. On January 16, 1918, Dr. Nauman returned to Central City, having decided to buy the farm on the terms stipulated in the contract. The plaintiff himself was temporarily absent in Texas at this time, but Mr. Bockes was in charge of the business in his absence, and drafted a contract for the sale of the land to Dr. Nauman on the terms stated, and took him out to the farm to have the defendant, Mangelsen, sign the contract. The defendant was not at home, but his daughter informed Mr. Bockes that they had sold the place to another party. Then Bockes and Nauman returned to town. The fact was that the defendant himself had sold his farm to Clarence E. Lawson on January 9, 1918, but had not notified either the plaintiff or Mr. Bockes of the sale, and neither of them had any knowledge of it. No notice was ever given by the

defendant of a withdrawal of the farm from the market. It is established that on January 16, 1918, Dr. Nauman was ready, able, and willing to buy the farm on the terms fixed by the defendant. The plaintiff testified that the reasonable value of his services in procuring the purchaser was $800.

Upon this state of facts the plaintiff contends that, as he had within the time fixed procured a purchaser ready, able, and willing to buy the land on the terms stated, and was prevented from completing the sale solely by reason of the owner of the land having previously sold it without notice to him, he is entitled to recover the sum fixed in the agency contract, citing, among other cases, *Hallstead v. Perrigo,* 87 Neb. 128, to sustain his contention. The defendant, on the other hand, insists that his sale of the land revoked the agent's power to sell the land, and that therefore the defendant is not liable for anything either by way of compensation or damages, citing *Hallstead v. Perrigo, supra, Woods v. Hart,* 50 Neb. 497, *Miller v. Wehrman,* 81 Neb. 388, *Maddox v. Harding,* 91 Neb. 292, and *Buck v. Hogeboom,* 2 Neb. (Unof.) 853, among other cases, to sustain his contention.

There is no doubt that when an agent has a mere naked authority to sell land, and such authority is not coupled with an interest, the landowner may revoke the authority at any time. *Miller v. Wehrman, Maddox v. Harding, Woods v. Hart, supra.* And even where a landowner by written contract gives an agent the exclusive agency to sell his land, the owner is not thereby precluded from selling it himself without the broker's aid or knowledge. *Hallstead v. Perrigo, supra; Buck v. Hogeboom, supra.*

These propositions that the landowner may at will revoke a naked agency for the sale of his land, and may himself sell it, notwithstanding an exclusive agency contract, are well settled in this state by the cases cited. But it does not follow, as contended by the defendant in this case, that no liability attaches to the landowner for services performed or expense incurred by the agent before

he had notice or knowledge of the revocation or sale. The agent's power to sell the land may be revoked by operation of law when the owner sells it, or it may be revoked by the owner exercising the right to do so, but in neither case does it necessarily deprive the agent of his right to compensation. The power to sell may be revoked, and yet the agreement to compensate remain in force. *Cloe v. Rogers*, 31 Okla. 255, 38 L. R. A. n. s. 366, and cases cited. This is the same theory upon which this court must necessarily have decided the case of *Maddox v. Harding, supra.* And in the *Hallstead* case the second section of the syllabus is as follows: "Where an agent is vested with a mere naked authority not coupled with an interest, his principal may revoke that authority before performance; but if the agent has rendered service and incurred expense in the course of his employment before his authority was canceled, the principal will be liable therefor, unless it is otherwise provided by the terms of their agreement."

This language could not have been used with any idea in mind other than that the agreement to compensate for services rendered an expense incurred up to the time of revocation still remained in force after the power to close a sale had ceased. And in case of a revocation of the agent's power to sell, either by the owner effecting a sale himself or by exercising his right to terminate the agency contract, the revocation does not become effective upon the agent's right to such compensation as is provided in the contract, unless and until the owner gives notice thereof to the agent. 9 C. J. 520, sec. 22, and cases cited. The Nebraska cases cited by defendant do not sustain his contention.

In the case at bar, the plaintiff agent, within the time specified in the contract of agency, procured a purchaser for the defendant's land upon terms specified in the contract, and before he had received notice or had knowledge of the sale by the owner; and, although the agent's power to sell necessarily was revoked by the owner's sale of the land on January 9, the agent had performed his part of

the contract before he knew or had notice of the sale, and on the facts set forth is entitled to the commission stipulated in the contract.

We hold that the agency contract remained in force as far as it related to his compensation up to the time on January 16 when plaintiff's employee, Bockes, was informed that the land had been sold to another. It follows that the trial court erred in directing a verdict in plaintiff's favor for only $56, which, according to the testimony, was the reasonable charge for some of the automobile trips the plaintiff made in an effort to sell the land.

Defendant finally argues that, as the agency contract did not provide that he give notice to plaintiff of a withdrawal of the land from the market, and as the sale by the owner necessarily operated to withdraw the land from the market, the contract terminates on such sale without notice to the agent. We cannot agree to this argument. The law requires that the parties act toward each other in good faith. 9 C. J. 520, sec. 22; *Maddox v. Harding, supra.* And good faith would require notice. The landowner could not secretly sell his land, and thereby terminate the agent's right to effect a sale, and, by remaining silent, permit the agent to expend further time and effort in attempting to make a sale, and escape liability under his contract. To approve such a doctrine would be in effect to say that one man could escape liability by his own neglect or craft, and another be deprived of his rights without fault on his part. As far as the agent's right to compensation under the contract is concerned, the land could not be "withdrawn from the market" under the terms of the contract, until the agent had notice or knowledge of such withdrawal.

Some distinction is attempted to be drawn between compensation under and by virtue of the contract and damages for the breach of it. The distinction is academic and unsubstantial. It makes no difference to either party whether plaintiff is considered to have earned the compensation provided in the contract by performing it, or has been damaged by the loss of the stipulated commission by

the owner's preventing performance. The result would be the same in either view.

In this case, the defendant's answer set up that he did not understand the contract when he signed it, and that certain representations were made to him at the time, and, as this court said in the *Hallstead* case, this opinion should not be construed to the prejudice of any lawful defense the defendant may interpose to plaintiff's claim. It is true the record shows that defendant rested his case, and it might seem that he acquiesced in the court's announcement of its intent to make the order; but, as defendant excepted to the ruling, it leaves the record in such confusion that we think it best to remand the case for a new trial.

For the error of the district court in directing a verdict in plaintiff's favor for $56 only, when it should have been for $800 on plaintiff's case, we recommend that the judgment of the district court be reversed and this cause remanded for a new trial.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and this cause remanded for a new trial.

REVERSED.