Kenneth W. FJELLAND, Appellee,

v.

Vincent WEMHOFF, Appellant.

No. 2–57719.

Supreme Court of Iowa.

Jan. 19, 1977.

Carroll Wood, Webster City, for appellant.

Brekken, Deppe & James, Story City, for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal involves a dispute between a realtor and a farm owner regarding a real estate commission.

Defendant Vincent Wemhoff, himself a realtor in Missouri, owned a quarter-section farm in Hamilton County, Iowa. He listed it for sale with two realtors in the area of the farm. The listings were "open," that is, the realtors did not have an exclusive right to sell the farm and Wemhoff was free to sell it himself or through other realtors.

Plaintiff Kenneth W. Fjelland is a third realtor in the area of the farm. He had several telephone conversations with Wemhoff. In his first one, which occurred early in August 1972, Fjelland sought to list the farm for sale. Following that conversation he sent Wemhoff a written agreement on a printed uniform form (Exhibit 2), listing

the farm for sale for a three-month period. The sale was to be on a ten-year contract. The listing stated, "IN CONSIDERATION of services which said REALTOR herein agrees to render, we give said REALTOR the exclusive right to sell said property," etc. The commission was to be 5% if the realtor found a ready, willing, and able buyer. The printed part of the listing also stated that the realtor would receive the commission "if said property is sold by the owner, or his authorized agent, or any other person or persons during said period . . . ."

Wemhoff did not sign or return the listing. Fjelland testified he then called Wemhoff a second time:

Q. [Mr. Deppe] After you sent Plaintiff's Exhibit 2 down to Mr. Wemhoff, did you have any other discussions in reference to this contract? A. Yes. I called him on the ninth of August presuming he had received it by then and had a chance to look it over. I did call him on the ninth of August 19th [sic], 1972. He said, "He had received it"; I asked him, "If the terms were all right; written up all right?" He said, "Yes, with the exception of one change, he would like or he preferred a seven-year contract, rather than a ten-year contract."

Q. Did he make that change? A. Yes, he did . . . ..

Q. Was there any other discussion that you recall at that time, about any changes in the contract, which is Plaintiff's Exhibit 2? A. None.

Wemhoff, however, testified somewhat differently. He testified as follows regarding the first telephone conversation:

Q. [Mr. Wood] What was his purpose in calling you? A. He wanted to secure a listing on a piece of property up here . . . ..

Q. And what listing was discussed? A. Well, he wanted an exclusive listing. I said, I couldn't give him one, because I had listed with other realtors.

Q. Tell Mr. Fjelland that the first time he called you? A. Yes, sir . . . ..

Q. Well, that first conversation. Did you talk about a written contract for listing? A. Yes, we did.

Q. And did you talk about an exclusive versus an open listing? A. Yes, we did.

Q. You told him at the time you would not sign an exclusive listing? A. That's right.

Wemhoff testified regarding the second telephone conversation:

Q. Ask you if you had signed the contract? A. Yes, he did.

Q. What was your answer to him? A. I told him I wasn't, I wanted changes on it.

Q. What was the changes you wanted on it? A. I wanted to change the tenure to seven years; I wanted to have an open listing on it . . . .. I just told him that I couldn't give him an exclusive listing; I had listed with other realtors; that I would give him an open listing on it.

Q. What was—what were your arrangements or agreement, so you did sign this agreement? . . . A. I struck the word "exclusive." What we have in our company, we have a uniform listing contract; and when we have an open listing, we strike through the word "exclusive."

Q. Did you tell him you were going to do this? A. Yes, sir.

Q. Did he agree to it? A. Yes, sir

. . ..

Q. Would you have signed this contract with the exclusive provisions in this, without changing them? A. No, sir

. . ..

Q. Did you convey to Mr. Fjelland at the time and prior to the time you signed this contract, that you were crossing out the word "exclusive," so that it would be an open listing? A. Yes, sir.

Q. You told him that? A. Yes, sir.

With a pen, Wemhoff made and initialed two changes in the listing: he struck "10" and substituted "7" for the term of the land sale contract to be sought by the realtor, and he struck "exclusive" in the clause, "we give said REALTOR the exclusive right to

sell," etc. Fjelland introduced the listing at trial and we have it before us. It clearly shows these two changes. Wemhoff did not however strike out the printed clause further along in the listing, giving the realtor a commission on a sale by Wemhoff himself or others. Wemhoff signed the listing and returned it to Fjelland.

In the latter part of August 1972, Fjelland obtained a written offer from Roger Clausen to buy the farm for the price and on the terms in the listing, with the addition of a condition. Clausen had to obtain a loan on other land to raise the down payment for this farm. Hence his written offer contained the following clause: "This offer is made subject to a $15,000 Metropolitan loan on another property. Approval of loan by Sept. 20, 1972." Clausen testified on cross-examination: "Q. Well, how were you able to perform the contract as of August 19th, when you made the offer? A. I made the offer, subject to approval of the loan. Q. That's right. It was conditional upon you receiving the loan, wasn't it? A. Right."

Fjelland testified that on August 31, 1972, he told Wemhoff by telephone he had an offer "subject to approval of a loan." Wemhoff testified, "He [Fjelland] told me he had a buyer, if the buyer could get the money." Wemhoff told Fjelland he would be in Iowa over Labor Day weekend, which was September 2 to 4, 1972.

That weekend when Wemhoff was in Iowa, he told the farm tenant, Harold E. Holm, that the farm had been sold if the prospective buyer could raise the money. Holm testified that "at the time I asked what was the terms of the contract. Well, then, he told me; and at that time I told him I would buy it." Further, "Q. You relied on his word; he relied on yours; as far as you were concerned, you had bought it? A. Yes." Wemhoff's version was a little different—that Holm "told me he would call me and tell me for sure the following day, to whether or not he would take it." Wemhoff's testimony continued, "Q. Did he? A. Yes, sir. Q. Did you consider it sold at the time? A. Yes."

According to the testimony the sale to Holm would have been made about September 2 or 3, 1972.

On September 6, 1972, the branch office of Metropolitan Life Insurance Company at Carroll, Iowa, wrote Clausen at Stanhope, Iowa, that his loan application was approved subject to good title on the other land. On September 7, 1972, Fjelland called Wemhoff by telephone and asked why Wemhoff had not contacted him, and Wemhoff stated he had sold the farm.

Subsequently Wemhoff and Holm entered into a written agreement for the sale of the farm on contract, and Holm made the down payment.

Still later Fjelland brought the present action against Wemhoff for a commission. In the trial court he presented two bases for recovery. One basis was that when Metropolitan approved the Clausen loan, Clausen's offer to buy became unconditional, and that Wemhoff did not actually sell to Holm until later when Wemhoff and Holm signed a written agreement for the sale of the farm on contract. Fjelland's other basis was that if the Wemhoff-Holm sale was actually effected by their verbal agreement, then Wemhoff owed a commission under the clause of the listing covering a sale by the owner himself during the three-month period.

The trial court held for Fjelland on the first basis and awarded him a commission. The court did not decide whether the listing was exclusive or open. With reference to the listing, the court stated:

The defendant listed the farm in question, with the plaintiff on or about the 5th day of August, 1972. The farm was a ¼ section and the selling price was listed at $100,000; for further particulars as to the written listing, see exhibit "2". (Plaintiff). The defendant, before he signed the listing agreement, crossed out the word "exclusive". This listing is labeled "Uniform Listing Contract". There is no question that the same was signed by both the plaintiff and defendant.

Fjelland did not ask for an enlargement of the trial court's findings or for a ruling on his second basis.

■ Wemhoff appealed. Fjelland did not cross-appeal on his second basis. In one way or another in Wemhoff's brief, he challenges both of Fjelland's bases, but we find consideration necessary of only the first basis. The parties tried the case without a jury by ordinary proceedings; hence the trial court's fact findings bind us if they are supported by substantial evidence but its legal determinations are open to re-examination. *Hedrick Savings Bank v. Myers*, 229 N.W.2d 252 (Iowa).

I. Fjelland's first basis raises two problems.

■ (a) Did Wemhoff and Holm enter into a contract for the sale of the farm at the time they made their oral agreement or at the later time when they signed a writing? The American Law Institute states the rule on this subject thus, in Restatement, Contracts 2d § 26:

Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiation.

The determinative factor is the parties' intent. We stated in *Elkader Co-op Co. v. Matt*, 204 N.W.2d 873, 875 (Iowa):

The intention of the parties is decisive on this issue—did they *intend* the oral agreement to be binding or not?

■ The testimony in the present case leaves no doubt as to what the parties intended at the time they made the oral agreement. The agreement had only two parties—Wemhoff the seller and Holm the buyer. When counsel asked Wemhoff on the stand, "Did you consider it sold at that time?" he answered, "Yes." When counsel asked Holm whether "as far as you were concerned you had bought it?" he responded, "Yes." We hold that the Wemhoff-

Holm oral agreement was a contract for the sale and purchase of the farm.

■ (b) As regards Fjelland, was the Wemhoff-Holm oral agreement a contract notwithstanding the statute of frauds, § 622.32(3), Code 1975? That statute constitutes a rule of evidence, but both Wemhoff and Holm admit the oral agreement. *Huston v. Gelane Co.*, 254 Iowa 752, 119 N.W.2d 188. Fjelland cannot question the Wemhoff-Holm agreement on the ground of the statute of frauds. *Sherwood v. Greater Mammoth Vein Coal Co.*, 193 Iowa 365, 185 N.W. 279; Restatement, Contracts 2d § 218; 73 Am.Jur.2d Statute of Frauds § 578 at 217; 37 C.J.S. Frauds Statute of § 220 at 715. As to Fjelland the Wemhoff-Holm agreement was a contract although it was oral.

The effect of these legal determinations is to defeat Fjelland's first basis of recovery. Wemhoff sold the farm before Fjelland's prospect was "able" to buy it. On Fjelland's first basis of recovery, his listing thus terminated before he produced an able buyer. *White & Hoskins v. Benton,* 121 Iowa 354, 96 N.W. 876. See also *Espy v. Eells,* 349 Mass. 314, 207 N.E.2d 918; *Wallace v. Figone,* 107 Mo.App. 362, 81 S.W. 492; *McFadden v. Crisler,* 141 Tenn. 531, 213 S.W. 912; *Dindo v. Cappelletti,* 116 Vt. 403, 77 A.2d 840. The record discloses no substantial evidence of bad faith on Wemhoff's part in accepting Holm's offer to buy the farm. Nor does the record disclose expenditure of time or effort by Fjelland after Wemhoff sold to Holm and before Fjelland learned that Wemhoff had sold the farm. Cf. *Staats v. Mangelsen,* 105 Neb. 282, 180 N.W. 78. The trial court erred in allowing recovery on the first basis.

■ II. Fjelland did not ask the trial court to enlarge its findings and rule upon his second basis for recovery. See rule 179(b), Rules of Civil Procedure. Therefore Fjelland presents nothing for review.

Fjelland's petition must be dismissed.

REVERSED.