[Civ. No. 20178.   Second Dist., Div. Two.   Feb. 11, 1955.]

B. ALLAN SUMNER et al., Appellants, v. G. E.
FLOWERS et al., Respondents.

Charles J. Katz and William B. Murrish for Appellants.

Charles H. Carr and Harold M. Williams for Respondents.

MOORE, P. J.—The question posed is whether parol evidence may be received to show that a signatory to a contract was in fact the agent of a fully disclosed principal.

Appellants Sumner and Farber and respondent Furnish, prior to August 11, 1941, were associated on the staff of Madison Hospital, Los Angeles. Sumner was a business administrator, Farber an osteopathic doctor, and Furnish, a medical physician. After lengthy consultation, the three men

on August 11, 1941, purchased the Pioneer Hospital of Los Angeles and took title in the name of defendant Flowers, as nominee of the purchasers. Thereafter, they caused the Parkview Hospital Inc. to be organized and its 300 shares to be issued as follows: 100 shares to Farber; 100 to Sumner; 100 to Furnish. For personal reasons, Dr. Furnish requested that his shares remain temporarily in the name of Miss Flowers, his confidential secretary. His associates acceded to Dr. Furnish's request and on September 14, 1941, they executed a writing whereby it was agreed that no party could alienate his shares without the permission of his fellow stockholders. The shares representing the Furnish interest were factually issued to Miss Flowers, although they were then and continued to be the property of Dr. Furnish. After issuance of the shares, they were delivered by the owners to Nathan Kates to be by him held in escrow until September 23, 1944. On that date, Kates released certificate number 4 for 100 shares in the name of Flowers who on October 3, 1944, endorsed the certificate to Dr. Furnish. At that time and continuously to a date in 1945, Miss Flowers was the employee and confidential secretary to Dr. Furnish. Immediately upon the incorporation of the Parkview Hospital, Dr. Furnish became its medical director and remained in that position until December 31, 1951. Prior to that date, dividends were paid to Furnish and he was credited with accounts payable equally with Sumner and Farber. On several occasions after 1944, Furnish requested the corporation to issue a stock certificate in his name as owner of the shares standing in the name of Miss Flowers. These requests were refused.

On August 17, 1951, Furnish served a notice on the corporation for a full accounting and for the issuance of a new stock certificate in his name. This notice was pursuant to sections 3011 through 3016 of the Corporations Code. These sections enumerate the penalties for a corporation's failure not to issue the proper stock certificate to a shareholder and the penalties for not furnishing a financial statement every six months to stockholders who own more than 10 per cent of the outstanding stock. On September 6, 1951, appellants sued for declaratory relief asking that the exact rights of all parties concerned be clarified by the court and demanded specific enforcement of the written contract. Appellants pleaded that Flowers had forfeited all rights in the corporation by assigning stock certificate number 4 to Furnish, contrary to the stock agreement. That instrument provided that

no party other than those named in the stock agreement could purchase the corporate shares; also, that because of the assignment by Flowers of the 100 shares contrary to the terms of the stock agreement, they are entitled to buy such stock immediately at a price set by arbitration, if their offer of $25,000 is refused.

Appellants contend that a principal cannot sue where terms of the contract exclude him or where the contract is drawn with the agent; and the rule that undisclosed principals in contracts may sue and be sued is subject to the rule of evidence that parol testimony is not admissible to vary the terms of a written contract. Ample authorities are cited for these propositions, but such are not applicable to the case at bar.

Substantial, direct evidence was introduced to prove that the principal was not only known and disclosed, but at the time the contract was drawn, there was no question that Furnish was the legal, factual and equitable owner of stock certificate number 4. Furnish put up the money, was paid the dividends, was medical chief of staff and exercised an active voice in the actual decisions pertaining to corporate affairs. Miss Flowers' position as confidential secretary and agent to Furnish was known and recognized as such. Sumner had never encountered Miss Flowers until the actual negotiations were launched and it may hardly be presumed that Sumner, an attorney and a business administrator, would enter upon such a venture as this with an unknown secretary who was not likely to be in such position as to be able financially to uphold her third of the burden of the corporation. The lower court decided that Furnish was a disclosed principal and that all dealings with Miss Flowers were subject to the approval of Furnish. As a matter of record, there were no dealings with Miss Flowers after her participation as the common agent during the original negotiations.

This court will not interfere with a factual finding of the trial court that is clearly supported by substantial evidence. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

The question at bar then turns on whether a disclosed and known principal may substitute himself for his agent when the terms of the contract specifically forbid additional parties to the instrument.

Unfortunately, in the past, the law in this field was for a time obscured by doubtful language. Because of this uncertainty, appellants rely primarily upon the decisions of

*Ferguson* v. *McBean,* 91 Cal. 63 [27 P. 518, 14 L.R.A. 65], and *Bloom* v. *Coates,* 190 Cal. 458 [213 P. 260]. These decisions hold that where the disclosed principal is present, but his agent signs the instrument for him, he can have no interest or liability under the contract.

Such doctrine was effectually overruled by *Pacific Ready-Cut Homes, Inc.* v. *Seeber,* 205 Cal. 690 [272 P. 579], and *Marshall* v. *Bernheim,* 64 Cal.App. 283 [221 P. 401]. In the latter case, a hearing was denied by the Supreme Court, the decision having clarified the law as declared in *Geary Street Park & Ocean R. Co.* v. *Rolph,* 189 Cal. 59 [207 P. 539]. After interpreting language of the Geary Street decision, the court concluded that where the other party makes known his intent at the time the contract is signed to bind the agent exclusively, the principal can have no interest in the contract; but where the trial court upon substantial evidence *finds* that the other party accepted "both the agent and the principal, there was no election at the time the contract was made, and, of course we are bound by ,that finding." The trial court so found in the case at bar.

This position is established by the United States Supreme Court in *Ford* v. *Williams,* 21 How. (U.S.) 287, 289 [16 L.Ed. 36, 38], wherein the Supreme Court stated, "The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein, and notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction." This declares the universal law.

Appellants contend that the contingent remainder provisions* of the contract cannot be ignored. They argue that the provision for two of the signatories to be entitled to purchase the shares of the third in the event of his decease or of his decision to sell, means that Furnish cannot be substituted for Miss Flowers. Such contention would lead

---

*Paragraph XXXIX of Stock Agreement.

In the event of the death of either or any of Flowers, Farber, or Sumner during the period of this Agreement, without having disposed of his or their stock in the Corporation, the survivor or survivors, providing they and each of them have not disposed of their stock in the Corporation, shall have the right to purchase the stock interests of the deceased party in the Corporation, in equal shares, or the stock interests of the deceased parties, as the case may be.

to error. His position can best be illustrated by harking back to the era of stockholder's liability for corporate debts. Had Furnish attempted to escape liability by asserting that the contract was not in his name, the court would have been obliged to rule against him. Since he was the equitable owner of one third of the outstanding shares, he would have been obligated to that extent of a loss. Unquestionably, the life tenancy* involved is dependent upon the longevity of Furnish and no one else.

Likewise, there is no merit in the contention that the nonassignability clause in the contract prevents the substitution of the principal. There has been no substitution in fact, the lower court having found that Miss Flowers was merely the alter ego of the principal.

█ The contention of appellants that the oral agency agreement was illegal as a device to defraud creditors will not be considered. It was not pleaded or otherwise presented to the trial court; no findings were made on this issue and no error as to it is involved.

The foregoing disposes of all other contentions of appellants.

The judgment is affirmed.

McComb, J., and Fox, J., concurred.