507 P.2d 713

Ralph JENSEN and J. Golden Jensen, Plaintiffs and Respondents,

v.

O.K. INVESTMENT CORPORATION, a Utah corporation, et al., Defendants and Appellants.

No. 12899.

Supreme Court of Utah.

March 9, 1973.

Strong, Poelman & Fox, Harold A. Hintze, Salt Lake City, for plaintiffs-respondents.

Prince, Yeates, Ward, Miller & Geldzahler, Richard L. Blanck, John M. Bradley, Salt Lake City, for defendants-appellants.

CALLISTER, Chief Justice:

Plaintiffs initiated this unlawful detainer action to obtain restitution of certain real property occupied by Trailer Mart, Inc., dba Dan's Campers . 'N Trailers, and

Homes American Style, Inc. Both sides moved for summary judgment, and judgment was rendered in favor of plaintiffs.

Plaintiffs, the owners of a parcel of real property, executed a lease agreement with O.K. Investment Corporation. On the same day, O.K. as lessor executed a lease agreement with Max Siegel. Plaintiffs' lease provided that O.K. would not assign the lease or underlet the premises without their written consent. Plaintiffs added at the end of their lease agreement their written approval of the subletting of the property to a proposed camper recreational vehicle dealer without releasing O.K. of any responsibilities with respect to the lease. Max Siegel was president of Dan's Campers, and Dan's has occupied the premises since the term of the leases began; O.K. has never occupied the property.

The lease between plaintiffs and O.K., which shall hereinafter be referred to as the first lease, had an initial term of three years commencing January 1, 1968, with three option periods of renewal at an increased rental, which would extend the term through December 31, 1988. The lease between O.K. and Max Siegel, which shall hereinafter be referred to as the second lease, also commenced on January 1, 1968, and had an initial term of one year, with an option to renew for two years; thereafter, the three other options to renew coincided with the first lease. Both leases provided for a six-month notice of intent to exercise the options. The first lease provided for a monthly rental of $225 for the initial term with an increment to $250 upon the first renewal, which would commence on January 1, 1971. The second lease provided for a monthly rental of $225 for the first year, with an increase to $250, commencing on January 1969.

The record reveals that for the first nine months Dan's Campers issued rental checks to O.K. Investment; thereafter, all rental payments were made by Dan's Campers or Homes American Style, Inc., directly to plaintiffs. It is of significance that Dan's Campers continued to pay a rental of $225 for the initial term of three years, as provided in the first lease, rather than the increment to $250 after the first year, as provided in the second lease. Another aspect of significance was a letter from plaintiffs to O.K. requesting remittance of O.K.'s share of the property taxes. This letter was forwarded by O.K. to Dan Siegel with a notation that he should deal directly with plaintiffs. Thereafter, plaintiffs directed their requests for taxes to Dan Siegel, who, after the death of his father, on June 3, 1969, became president of Dan's Campers.

Dan Siegel, in response to a letter from plaintiffs requesting payment of the property taxes, sent a letter, on December 8, 1970, along with his remittance, stating that he was exercising the option to renew and to extend the lease for the period from

January 1, 1971, through December 31, 1977. He further stated that the monthly rental for that period of time, according to the lease, was $250, and that checks for that amount would be paid beginning January 1, 1971. Plaintiffs expressed neither objection to the tardy exercise of the option nor did they inform him that it was their position that he could not exercise the option and that he was merely a month-to-month tenant. Thereafter, the monthly rentals of $250 were accepted by plaintiffs.

Dan Siegel organized a corporation under the name Homes American Style, Inc., on March 31, 1971, and since that time he has been its president. During April or May of 1971, Dan met plaintiff, Ralph Jensen, at the premises and informed him that he planned to sell modular homes through a business organization and that he anticipated locating a sales lot on a portion of the premises. Dan explained that two modular homes would be installed as display units; Ralph asserted no objection and indicated approval. Dan Siegel, as president of Dan's Campers, in reliance upon his conversation, sublet a portion of the premises to Homes American Style, Inc., which thereafter made extensive and valuable improvements on the real property.

The record establishes that Dan's Campers made rental payments to plaintiffs from September 30, 1969, through June 30, 1971, as well as paying the 1969 and 1970 property taxes. Homes American Style, Inc., made the rental payments from July 29, 1971, through January 3, 1972, as well as paying the 1971 property taxes.

On January 20, 1972, plaintiffs served notice on Dan's and Homes American Style that they were tenants from month to month and directing them to deliver and surrender the premises by March 1, 1972. When defendants refused to quit the premises, plaintiffs commenced this action in unlawful detainer.

The parties have stipulated that except for the two corporate defendants previously mentioned, the other named defendants were not in possession of the property and should, therefore, be dismissed.

Plaintiffs successfully urged before the trial court that the second lease was a sublease; therefore, there was no privity of contract between them and Dan's Campers, and Dan's did not have the right to exercise the option to renew or extend the term. Plaintiffs have further contended that whether the second lease be denominated an assignment or sublease, this document designated the lessee as Max Siegel, and Dan's Campers was not a party thereto, was not in privity with plaintiffs, and acquired no right to exercise the option granted to O.K. in the first lease. Plaintiffs argue that the first lease provided that the lessors must give their written ap-

proval to the lessee to assign or underlet; that they authorized only a subletting and not an assignment; therefore, the second lease, if it be an assignment, was voidable by plaintiffs since it was made without their written consent.

Dan's Campers, by its pleadings, alleged that O.K. assigned the lease to Max Siegel, as agent for and on behalf of Dan's Campers. Plaintiffs contend that this agency relationship is irrelevant, since under the parol evidence rule, oral testimony to establish an agency where the written document contains no ambiguity as to the contracting party, is not permitted.

In Sumner v. Flowers,[1] the court cited with approval the following statement:

. . . "The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein, and notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction." This declares the universal law.[2]

■ Dan's Campers was not prohibited under the parol evidence rule from establishing by extrinsic evidence that Max Siegel was its agent, when he executed the second lease, and that Dan's, as principal, may enforce the rights acquired thereunder.

Plaintiffs concede that the right of renewal of a lease also passes with an assignment, but they vigorously urge that the transfer from O.K. to Max Siegel constituted a sublease and not an assignment.

■ There is a presumption that a lease has been assigned, when there is a person other than the lessee in possession of the leased premises, who is paying rent to the lessor.[3]

. . . Technical terms or special words are not necessary to an assignment. Any language which shows the intention of the parties to transfer the property from one to the other is sufficient, the form of the instrument being immaterial. If it has the legal effect to pass to another the lessee's interest in the whole or in any part of the demised premises for his entire term, or the remainder of his term, it is an assignment . . . . .

1. 130 Cal.App.2d 672, 279 P.2d 772, 774 (1955).

2. Also see 3 Am.Jur.2d, Agency, Sec. 357, pp. 716–717.

3. Karbelnig v. Brothwell, 244 Cal.App.2d 333, 53 Cal.Rptr. 335, 340 (1966); Abbott v. Bob's U-Drive, 222 Or. 127, 352 P.2d 598, 81 A.L.R.2d 793 (1960); 3A Thompson on Real Property (1959 Replacement), Sec. 1208, p. 45.

The formal character of the paper or the designation given the transaction in the contract is not important in determining whether an instrument is a sublease or an assignment. When the lessee's entire estate passes the instrument is an assignment, though words of demise are used, and rent and a right of reentry for nonpayment are reserved, or even though it is called a sublease . . . . The test is whether the grant leaves a reversionary interest in the original lessee or operates to transfer his entire term . . . . .

A sublease for the whole term is in law an assignment as between. the original lessor and the sublessee, . . . . .

Where the instrument creates an assignment and not a sublease the relationship of landlord and tenant exists between the lessor and the assignee and their rights inter se are determined accordingly.[4]

Plaintiffs urge that by the terms of the second lease, O.K. retained a reversionary interest in the premises. In the first lease the initial term was for a period of three years; while in the second lease, the initial term was for one year, with an option to renew for two years.

In Cicinelli v. Twasaki,[5] the court stated:

A provision in a lease giving the lessee the option to extend or renew the lease creates only a contractual right. [Citations] It does not transfer any interest in the land [Citation] until the option is exercised. [Citation] However, when the option is exercised the covenant to renew ceases to be merely personal and runs with the land. The legal successors of the lessee as well as of the lessor are entitled to the benefits, and are burdened with the duties and obligations, which the covenant conferred and imposed on the original parties. [Citations]

█ In the instant action, although there is no evidence to indicate Dan's exercised the option by notifying O.K. that it desired to extend the term and thus succeed to the entire term granted to O.K. by the first lease, the conduct of the parties impels this result. O.K. notified Dan's to deal directly with plaintiffs to which the plaintiffs acceded. Except for the first nine months of the term, all rental payments and taxes were submitted directly to plaintiffs, which creates a presumption of an assignment. Under the particular facts

4. 3A Thompson on Real Property (1959 Replacement), Sec. 1210, pp. 53–55; also see Clements v. Steinhauer, 15 App. Div.2d 72, 221 N.Y.S.2d 793, 90 A.L.R.2d 1025 (1961); State v. Meador, 60 Wash. 2d 543, 374 P.2d 546, 548 (1962); Groth

v. Continental Oil Co., 84 Idaho 409, 373 P.2d 548, 549 (1962).

5. 170 Cal.App.2d 58, 338 P.2d 1005, 1009 (1959).

of this case when Dan's remained in possession of the premises beyond the first year, it succeeded to the entire term of O. K.'s under the first lease, and the second lease constituted an assignment.

■ Finally, plaintiffs insist that the second lease, if construed as an assignment, was voidable at their option because it was made without their written consent.

In Kintner v. Harr,[6] the court stated that a covenant in a lease prohibiting assignment without written approval of the lessor is for the benefit of the lessor and may be waived by accepting rent from the assignee and permitting him to remain in possession.[7]

The conduct of plaintiffs over the period of years in which Dan's remained in possession, particularly after they received written notification that the option to renew was being exercised and they accepted the increased rental payment, constituted a waiver of their right to demand a forfeiture for breach of the condition against assignment without written consent.

The judgment of the trial court is reversed, and this cause is remanded for disposition in accordance with this opinion. Costs are awarded to defendants.

HENRIOD, ELLETT, CROCKETT, and TUCKETT, JJ., concur.

6. 146 Mont. 461, 408 P.2d 487, 496 (1965).

7. Also see Karbelnig v. Brothwell, note 3, supra; Crossman v. Fontainbleau Hotel

Corp. (C.A. 5th, 1959), 273 F.2d 720, 80 A.L.R.2d 415.