508 P.2d 808

MARIANI AIR PRODUCTS COMPANY, a
corporation, Plaintiff and Respondent,

v.

GILL'S TIRE MARKET, Defendant
and Appellant.

No. 12992.

Supreme Court of Utah.

April 9, 1973.

Dwight L. King, Salt Lake City, for defendant and appellant.

Nathan J. Fullmer, Salt Lake City, for plaintiff and respondent.

CALLISTER, Chief Justice.

Plaintiff initiated this action to recover the rental payments for the remaining six

months of the term under a written lease of certain real property. The matter was tried by the court, and plaintiff was awarded judgment; defendant appeals therefrom.

Defendant, lessee, leased the premises from the plaintiff, lessor, for a term of eighteen months, beginning March 20, 1970, at a rental of $300 per month. Defendant proceeded to conduct a retail and wholesale tire business on the premises. Sometime in November 1970, defendant ceased the retail operation but continued to use the premises as a warehouse. On January 28, 1971, plaintiff's general manager met defendant's agent at the premises to inspect damages done to the walls in the front office area where the retail operations had previously been conducted. The damage had been caused by water leaking from an evaporative cooler located on the roof. Defendant had neglected to turn off the water line and to drain the cooler; the water had frozen and broken the fittings at the bottom of the tank, causing the water to leak into the building. Plaintiff's manager had the cooler repaired on March 4, 1971; thereafter he contacted defendant's agent to arrange for the painting of the damaged walls. Defendant's agent declined the offer, stating that the building had to be secured after hours.

Defendant did not submit the March rental payment or any thereafter. Plaintiff's president attempted to contact defendant's president on several occasions; he finally found him in his office on April 28, 1971. The two visited the premises to inspect the damage. Plaintiff's president requested the key for the purpose of determining the cause of the damage; he stated that if it were plaintiff's fault, he would repair it; however, if it were defendant's fault, it would be defendant's responsibility to effect the repairs; defendant readily agreed and gave the key.

Subsequently, plaintiff determined the water damage was caused by defendant's improper maintenance of the air cooler, a responsibility assigned to defendant under the written lease agreement. Thereafter, plaintiff made numerous attempts to contact defendant but without success; this action was commenced. At the expiration of the term of the lease, defendant had not attempted to remove its personal property, such as signs and tire racks from the premises.

At the trial, two defenses were asserted: (1) that by giving the key to the premises, defendant had surrendered the lease and plaintiff had accepted; (2) that the damage to the walls in the front office rendered the premises unusable and constituted a constructive eviction.

From the evidence, the trial court found that it was defendant's intention to abandon the premises; and that plaintiff had neither acted to terminate the lease nor

had it failed to perform any obligation thereunder so as to entitle defendant to terminate the lease.

On appeal, defendant contends that the acceptance of the key by plaintiff's president constituted a surrender by operation of law of the lease by the lessee and an acceptance by the lessor; and, thereafter, defendant was not liable for the rent.

In Belanger v. Rice,[1] this court observed that a surrender of a lease by operation of law results from acts which imply mutual consent independent of the expressed intention of the parties that their acts shall have that effect. The intention of the landlord to accept the tenant's surrender of the premises is important on the question of surrender by operation of law, and a surrender will not be implied against the intent of the parties, as manifested by their acts. All the facts must be considered in determining the legal effect of the landlord accepting the keys, for to work a surrender the keys must be both offered with the proper intent and accepted with the proper intent.

The mere acceptance of keys by the landlord, without more, neither terminates a lease, nor relieves the tenant of his obligation. The burden is on the party, relying on a surrender of a lease, to prove it; and the proof must be clear where the surrender is to be inferred from circumstances inconsistent with the intention to perform. The question of whether the acts and circumstances constituted a surrender and acceptance is one for the fact finder.[2]

In the instant action, the finding of the trial court that plaintiff had not accepted a surrender of the lease is supported by substantial evidence in the record and consequently will not be disturbed on appeal. Defendant's claim of a constructive eviction, under the circumstances revealed by the record, is without merit.[3] The judgment of the trial court is affirmed. Costs are awarded to plaintiff.

HENRIOD, ELLETT and TUCKETT, JJ., concur.

CROCKETT, J., having disqualified himself, does not participate herein.

1. 2 Utah 2d 250, 252, 272 P.2d 173 (1954).

2. Coffin v. Fowler, Alaska, 483 P.2d 693, 695 (1971); Noce v. Stemen, 77 N.M. 71, 419 P.2d 450, 451 (1966).

3. "A constructive eviction cannot be predicated on a condition arising from a want of repairs which it is the duty of the tenant to make." 49 Am.Jur.2d Landlord and Tenant, Sec. 315, p. 333.