ARMEN Z. NALBANDIAN *vs.* HANSON RESTAURANT & LOUNGE, INC.

Plymouth.   October 7, 1975. — December 3, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Agency,* Undisclosed principal, Sealed instrument.   *Contract,* Under seal.

This court abolished the distinction between sealed and unsealed instruments with respect to the liability of an undisclosed principal, and held that an undisclosed principal may be held liable on a contract executed under seal by his agent.   [153-157]

BILL IN EQUITY filed in the Superior Court on March 2, 1973.

The suit was heard by *Lynch*, J., on a motion for summary judgment.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Kirk S. Giffen* for the plaintiff.

*Louis Karp & John P. Farrell,* for the defendant, submitted a brief.

QUIRICO, J.   This case was commenced on March 2, 1973, by a bill in equity seeking a decree ordering the specific performance of a written agreement to sell a certain parcel of real estate owned by the defendant, a corporation, and located in Hanson, in this Commonwealth.[1]   The agreement was signed under seal by the

---

[1] The agreement seems, on its face, to contemplate and to include the sale of a cocktail lounge business in addition to the sale of the real

plaintiff as the buyer and by one Len St. Jean as the seller.[2] The defendant's name does not appear in the agreement, and there is nothing in the agreement to indicate that St. Jean was acting as agent for the defendant.

The defendant filed a motion for summary judgment in its favor on the basis of the pleadings and of the plaintiff's admission of certain facts pursuant to a notice under G. L. c. 231, § 69, and the motion was allowed by a judge of the Superior Court. Mass. R. Civ. P. 12, 56, 365 Mass. 754, 824 (1974). The case is before us on the plaintiff's appeal from the judgment entered pursuant to the allowance of the motion therefor. The appeal was originally entered in the Appeals Court and was thereafter removed by us to this court for direct appellate review. G. L. c. 211A, § 10(A), inserted by St. 1972, c. 740, § 1.

The trial judge ruled correctly on the basis of the applicable law in effect on the date he ordered the entry of summary judgment for the defendant. However, because we are persuaded that the law as thus applied should be changed, the judgment is to be vacated and further proceedings are to be had in the case consistent with this opinion.

We summarize certain additional relevant facts which are apparently not disputed. The real estate in question was formerly owned by Leonard St. Jean and Eleanor St. Jean, and on May 12, 1971, they conveyed it to the defendant. Leonard St. Jean is presumably the same person who, under the name of Len St. Jean, on Janu-

---

estate on which the business was being conducted, but the pleadings and briefs treat the case as though it involved an agreement for the sale of real estate only.

[2]The agreement recited that it was "[s]igned and sealed." By virtue of G. L. c. 4, § 9A, such a recital in a written instrument is sufficient to give the instrument the legal effect of a sealed instrument. See *Marine Contractors Co.* v. *Hurley,* 365 Mass. 280, 285 n.2 (1974).

ary 8, 1973, entered into written agreement to sell the same real estate to the plaintiff. The plaintiff paid a broker acting for St. Jean the sum of $1,200 toward the agreed purchase price of $32,000. St. Jean did not disclose to the plaintiff that title to the real estate was in the defendant.

To the extent that the summary judgment was based on the insufficiency of the allegations in the plaintiff's bill to entitle him to prevail, the plaintiff contends that we must consider several allegations made by him, notwithstanding their denial by the defendant in its answer. These allegations are: (a) that his purchase and sale agreement was made with "the defendant corporation acting by Lennie St. Jean its President who represented that he had full authority to sell said real estate," (b) that "St. Jean is the owner of two-thirds or more of the stock issued and outstanding of the defendant corporation," and (c) that the "defendant corporation acting by its President Lennie St. Jean, refuses to complete the transaction as agreed and repudiates the agreement by denying its validity."

The defendant's answer included as an appendix thereto a copy of the written agreement signed by the plaintiff and St. Jean. The name of the defendant does not appear on the face of the agreement. The answer also included the statements that "it [the defendant] is not required to fulfill an unauthorized agreement made by another; that it was not a party to the agreement . . . [and that] the writing purports to be a sealed instrument and the same cannot be asserted against one not a party thereto."

On August 9, 1974,[3] the defendant filed a motion for the entry of summary judgment in its favor for the same basic reasons stated previously in its answer, viz., that the agreement sought to be enforced was under seal, that the

---

[3] This motion was filed pursuant to Mass. R. Civ. P. 56, which had become effective on July 1, 1974.

defendant was not a party thereto, and that therefore the agreement was not enforceable against it. The judge allowed the motion by the following legend which he indorsed thereon: "After hearing . . . it appears to the court that there is no genuine issue as to a material fact and that the defendant, moving party, is entitled to judgment as a matter of law. Even assuming that the defendant authorized its president, St. Jean, to execute the purchase and sale agreement . . . which is the issue of fact claimed to exist, the court rules that defendant must prevail on the basis of the legal principles set forth in *Seretto* v. *Schell,* 247 Mass. 173, 176 (1923), and *Exchange Realty Company* v. *Bines,* 302 Mass. 93, 98-99 (1939), and cases cited therein. The motion is allowed."

The *Seretto* and *Exchange Realty Co.* cases are but two of the many in this Commonwealth holding that the well settled rule of the law of agency that an undisclosed principal may, on proof of his existence and identity, be held liable on an unsealed contract made in his behalf by his agent does not apply to a sealed contract. *Shawsheen Manor Corp.* v. *Colantino,* 329 Mass. 715, 718 (1953). *Ferrick* v. *Barry,* 320 Mass. 217, 224-225 (1946). *Moran* v. *Manning,* 306 Mass. 404, 410-411 (1940). *Elwell* v. *Shaw,* 16 Mass. 42, 46-47 (1819). See 3 Am. Jur. 2d Agency §§ 310, 312 (1962); Restatement (Second) of Agency §§ 190, 191 (1958).

The plaintiff criticises our law with regard to sealed instruments as "outdated and stale." He asks, in effect, that we abolish the distinction between sealed and unsealed instruments with regard to the doctrine of undisclosed principals. He goes further and asks that we declare the seal "to have no force, effect or consequence in . . . [the present] situation, or more preferably, any situation." While we are not prepared to, nor do we, intimate any view as to the propriety of the continued vitality of the seal in other fields of the law, we are in agreement with the plaintiff with respect to making sealed instruments equally subject to the law of agency

relating to undisclosed principals as are unsealed instruments.

The practice of sealing written documents is centuries old, its importance originally being as a means of authentication in times when most persons were unable to write their names. See 2 W. Blackstone, Commentaries *305-306; O.W. Holmes, Jr., The Common Law 271-272 (1881); 7 J. Wigmore, Evidence § 2161 (3d ed. 1940). Moreover, the seal came also to serve the evidentiary function of rendering documents indisputable as to the terms of the underlying transaction and thereby dispensed with necessity of proof by the summoning of witnesses. 9 J. Wigmore, Evidence § 2426 (3d ed. 1940). Indeed, the sealed instrument was considered such reliable evidence of an obligation that it became the contract itself (called a "specialty"), and loss or destruction of the instrument meant loss of all rights of the obligee against the obligor. See Ames, Specialty Contracts and Equitable Defences, 9 Harv. L. Rev. 49 (1895); 1A A. Corbin, Contracts § 255 (1963). Consistent with the development of these principles of law relating to seals in the common law was the development of the rule presently under consideration that one who did not himself execute a sealed instrument, and was not named in it, was not a party to such instrument or bound thereby. 1A A. Corbin, Contracts, *supra*.

The importance of the seal, however, has greatly diminished from the early days of the common law to the present time. The vast majority of American jurisdictions have, in fact, either abolished the seal or so modified or limited its use as to render it without legal effect for most purposes. For a table listing the various jurisdictions and indicating the present status of the seal and relevant statutory provisions, see 1 S. Williston, Contracts § 219A (1957, Supp. 1975). See also Restatement (Second) of Contracts 226-231 (Tent. Drafts. Nos. 1-7, 1973); Note, The Status of the Common Law Seal Doctrine in Utah, 3 Utah L. Rev. 73, 80-88 (1952). Moreover, legal schol-

ars have questioned or criticised the continued significance attached to the seal for any purpose and have advocated its total eradication. E.g., B. Cardozo, The Nature of the Judicial Process 155 (1921); O.W. Holmes, Jr., The Common Law 273 (1881). Significantly, this decline of the seal has in many jurisdictions resulted in the abolition of the distinction between sealed and unsealed instruments in the undisclosed principal situation. E.g., *Southern Pac. Co.* v. *Von Schmidt Dredge Co.,* 118 Cal. 368 (1897); *Lake Shore Management Co.* v. *Blum,* 92 Ill. App. 2d 47 (1968); *Efta* v. *Swanson,* 115 Minn. 373 (1911); *Donner* v. *Whitecotton,* 201 Mo. App. 443 (1919).

While the law of this Commonwealth has not entirely kept pace with the laws of many American jurisdictions in the abolition or limitation of the seal, the common law seal doctrine has eroded considerably in Massachusetts in certain respects. For example, the formal and technical requirements which were prevalent at common law for physical affixation of the seal have been greatly relaxed by statute. Since 1929, the mere recital that an instrument "is sealed by or bears the seal of the person signing the same or is given under the hand and seal of the person signing the same, or that such instrument is intended to take effect as a sealed instrument" is sufficient to give the instrument the legal effect of a sealed instrument. See G. L. c. 4, § 9A (originally enacted by St. 1929, c. 377, § 2). The traditional seal, or the scroll, or other such formal device used to seal instruments at common law, is no longer necessary, G. L. c. 4, § 9A, and thus the seal's function in authenticating documents and establishing the parties thereto no longer really exists in this Commonwealth. The parties to a sealed instrument cannot be said to be any more or less ascertainable than those to one that is not sealed.

This court has recognized that in some jurisdictions the difference between sealed and unsealed instruments has been "either entirely eliminated or greatly narrowed" in

general and particularly with reference to the liability of an undisclosed principal. *Stern* v. *Lieberman,* 307 Mass. 77, 79 (1940). A recent case, moreover, indicates that the rule which would absolve an undisclosed principal from liability on a sealed instrument executed by his agent may no longer be used in this Commonwealth to produce an inequitable result, thus foreshadowing our holding today. In *Selig* v. *Kopsiaftis,* 357 Mass. 91, 94 (1970), we said: "The application of the rule in the circumstances of this case would void a lease of which the petitioner had notice when he took title fourteen months before he petitioned for registration of his title. *This result is not equitable. We hold that the undisclosed principal is responsible under this lease*" (emphasis supplied). Cf. *Johnson-Foster Co.* v. *D'Amore Constr. Co.,* 314 Mass. 416, 420-421 (1943); Restatement (Second) of Contracts 226-231 (Tent. Drafts Nos. 1-7, 1973).

In light of the foregoing discussion, we are unable to perceive any reason to merit preservation of the distinction between sealed and unsealed instruments in the circumstances of this case. To allow an undisclosed principal to avoid liability for a contract executed by his agent for his benefit merely because the contract recites that it is under seal, while holding an undisclosed principal liable on an unsealed contract under otherwise identical circumstances, is today illogical and in many cases produces a result which is inequitable and unjust. *Selig* v. *Kopsiaftis, supra.* Therefore, we hold that the distinction between sealed and unsealed instruments with respect to the liability of an undisclosed principal is abolished, and that on sufficient proof of the existence and identity of an undisclosed principal, he may be held liable on contracts executed under seal by his agent in the same manner and degree and to the same extent as if the contract were not executed under seal. To the extent that our holding today is inconsistent with the holdings of the line of cases relied on by the defendant including

*Seretto* v. *Schell,* 247 Mass. 173 (1923), and *Exchange Realty Co.* v. *Bines,* 302 Mass. 93 (1939), those cases are hereby overruled.

The order allowing the defendant's motion for summary judgment is reversed and the judgment for the defendant is vacated. The case is to stand for further proceedings in the Superior Court consistent with this opinion.

*So ordered.*