Samuel P. **ROBISON**, Plaintiff and Respondent,

v.

Marvin W. **HANSEN** and Beverly M. Hansen, his wife, Defendants and Appellants.

No. 15063.

Supreme Court of Utah.

April 3, 1979.

8. 361 F.2d 764 (1966).

Craig T. Vincent of Beaslin, Nygaard, Coke & Vincent, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Before us is a judgment founded on a compromise agreement in the nature of a substituted contract. We affirm. No costs awarded.

Plaintiff, Robison, initiated this action to recover damages from defendants, Hansens, for the breach of an assumption agreement, in an assignment of leases to Hansen from Robison. The assignment was made pursuant to a contract, executed by Robison and his wife and Hansen and his wife, whereby Robisons exchanged their leasehold interests in a car wash, including its equipment, for three parcels of Hansens' real property, subject to and in assumption of mortgages.

Under the exchange agreement, $5,000 was credited to Hansens as payment for Robison's interest in the car wash. In addition, Robisons paid Hansens $5,000 in cash, and executed a promissory note in the sum of $15,348.27, payable at the rate of $200.00 per month. The note was secured by a mortgage on other property owned by Robisons.

Robison in his complaint alleged that as a result of the breach of the assumption agreement, he was compelled to pay the lessor of the car wash, Sentinel Security Life Insurance Company, $46,398.27, an amount in excess of $31,050.00 of the balance Robison owed to Hansens under the promissory note. Robison sought judgment for this sum and for an order discharging the indebtedness under the promissory note and releasing the mortgage securing it.

Hansens, in their answer, pleaded that the car wash was taken back by Robison, and Hansens were released of any and all liability. Defendants filed a counterclaim seeking the court to determine the amount of indebtedness due under the note and decreeing foreclosure of the mortgage.

Upon trial before the court, the court, in effect found a compromise agreement in

Gary A. Frank, Salt Lake City, for defendants and appellants.

the nature of a substituted contract. Under this substituted contract, Robison took possession of the car wash and his claim for Hansen's past and continuing breach of the assumption agreement was extinguished. In return, Hansens' demanded no further payments from Robison on the promissory note. The trial court ruled that the promissory note was fully paid and discharged and that the mortgage securing it was released and cancelled. Hansens' counterclaim was dismissed with prejudice.

On appeal, Hansens contend the trial court erred in its conclusion that Hansens' default of their obligation relating to the car wash required forfeiture of their rights in regard to the sale of the real property to Robison. Hansens claim that Robison was entitled to a credit against the balance of the purchase price on the property equal to the lease payments accrued and owing to Sentinel on the car wash prior to December 1970. Under such a theory, Robison would be in default under the promissory note and Hansens would be entitled to foreclose the mortgage.

To understand Hansens' argument it is necessary to review additional facts. The agreement providing for the exchange of the properties was executed July 15, 1970. The agreement provided that the Robisons desired to purchase the recited parcels of real property, subject to the specified mortgages, which they would assume, on the terms set forth including the transfer of Robisons' equity in a car wash to Hansens, and Robisons' granting of a mortgage on certain other real property owned by them, and cash payments. The consideration to support the agreement was recited as the performances of each of the parties as set forth under the agreement. Hansens agreed to sell and Robisons agreed to buy the specified parcels and to assume and discharge the mortgages. The agreement further provided that Robisons would owe Hansens the net amount of $25,348.27. This amount was to be paid by $5,000 in cash, the receipt of which was acknowledged in the agreement. Robisons were further given credit for another $5,000 for transferring their equity in the car wash.

The agreement provided that in conjunction with the transfer of Robisons' equity in the car wash, they would assign their leases in the premises and the equipment to Hansens and procure written permission of Sentinel, the lessor, to the assignment. Robisons further agreed to execute any other documents which might be necessary "to transfer all of their interest in the said car wash business."

Pursuant to this agreement a written assignment of leases was signed by Robison and Hansen on August 31, 1970. Therein Marvin W. Hansen agreed to assume the leases assigned and agreed to pay the balances on the leases. On September 10, 1970, the lessor, Sentinel gave its consent to the assignment of the lease but reserved its rights to hold Robison liable if Hansen failed to perform according to the terms and conditions of the lease. Hansen took possession of the car wash and Robison took possession of the real property in July 1970. Under the car wash leases, the monthly payment to Sentinel was $848.49. Hansen paid the July lease payment to Sentinel; this was the sole payment he made. In August 1970, and thereafter Hansen defaulted in the performance of making the monthly lease payment. Upon Hansen's default, Sentinel demanded Robison make the monthly payments or Sentinel would commence litigation. Robison did so.

Hansen failed to open and operate the car wash. Robison was deeply distressed over Hansen's default in the lease payments. The trial court found that in December 1970, pursuant to an oral agreement between the parties, Robison took possession of the car wash. Thereafter, Robison continued to make payments to Sentinel. After Hansen orally agreed that Robison take possession he neither demanded payment on the promissory note nor declared a default until the time the counterclaim was asserted.

Hansens' claim that they are entitled to the balance of the indebtedness under the promissory note, less an offset for the lease payments accrued and owing prior to December 1970, is predicated on their failure

**870**

to distinguish between an assignment of a lease and a sublease. Hansens claim they surrendered the property to Robison, their landlord, and were not thereafter responsible for the rent, a consequence which could occur only under a sublease.

▮ Both the contract in June and the assignment of leases indicate clearly an agreement of the parties to transfer the lessee's (Robison's) whole interest in the leases for the remainder of the term. Robison did not retain a reversionary interest, his entire leasehold estate was transferred to the Hansens; the consequence of such a transfer is deemed an assignment and not a sublease. Where there is an assignment and not a sublease the relationship of landlord and tenant exists between the lessor and assignee.[1] Since Robison and Hansen did not sustain the relationship of landlord and tenant, there could not have been a surrender of the premises.[2]

The agreement, effected by the parties, was a compromise. Robison took possession of the car wash and secured an agent to open and operate it in an attempt to generate sufficient income to cover the lease payments. Hansen had refused to operate the business, make the lease payments, or agree to compensate the agent for any losses sustained in the operation of the car wash. When Robison introduced the agent to Hansen and explained the agent would operate the car wash, Hansen arranged to have the keys delivered to the agent. According to Hansen's testimony, it was at this same meeting he requested Robison to make a payment on the promissory note; Robison refused. Thereafter, no further demands for payment were made. Thus, each party was asserting a breach by the other and making conflicting claims. The trial court found, in effect, a compromise agreement in the nature of a substituted contract, viz., the compromise was accepted as a substitution for, and extinguishment of, their existing claims.[3]

The substituted contract, whether of rescission or modification, may be expressed otherwise than in words. Such an implied, or inferred, agreement, found by the interpretation of conduct instead of words, has the same legal operation as if it had been expressed in words.[4]

▮ The actions of Robison and Hansen fall within the purview of the following:

. . . It is not essential for a valid novation [substituted contract] that assent and acceptance of the terms thereof be shown by express words, either spoken or written, but may be implied from the facts and circumstances surrounding the transaction and the conduct of the parties thereafter . . .[5]

▮ The trial court did not err in its refusal to enforce the parties antecedent claims, which were found to have been extinguished by the subsequent compromise agreement.

CROCKETT, C. J., and WILKINS and HALL, JJ., concur.

STEWART, J., does not participate herein.

---

1. *Jensen v. O. K. Investment Corporation*, 29 Utah 2d 231, 507 P.2d 713 (1973).

2. *Mariani Air Products v. Gill's Tire Market*, 29 Utah 2d 291, 508 P.2d 808 (1973).

3. *Johnson v. Utile*, 86 Nev. 593, 472 P.2d 335 (1970); 94 A.L.R.2d 504, 509, Restatement, Contracts, Sections 418, 419.

4. 6 Corbin on Contracts, § 1293, p. 197.

5. *United Security Corporation v. Anderson Aviation Sales Co., Inc.*, 23 Ariz.App. 273, 532 P.2d 545, 547 (1975); also see *Elliott v. Whitney*, 215 Kan. 256, 524 P.2d 699, 703–704 (1974).