Robert G. **GARLAND** and Mary Garland, Plaintiffs and Respondents,

v.

Anna R. **FLEISCHMANN**, Floyd J. Rigby, Ray Hall, and Rimaras, Inc., a Utah corporation, Defendants and Petitioner.

No. 890515.

Supreme Court of Utah.

April 21, 1992.

Michael W. Park, St. George, for Robert G. and Mary Garland.

Patrick H. Fenton, Cedar City, for Anna R. Fleischmann.

HOWE, Associate Chief Justice:

Plaintiffs Robert G. Garland and Mary Garland, husband and wife, brought this action against defendants Anna R. Fleischmann, Rimaras, Inc., a Utah corporation, Floyd J. Rigby, and Ray W. Hall to quiet title to real property in Garfield County. Only defendant Fleischmann asserted an interest in the land. She claims title under a sheriff's deed issued pursuant to an execution sale on a judgment she had against Rimaras, Inc. The trial court held that Rimaras, Inc., had no "ownership interest" in the property at the time of the sheriff's sale and, therefore, the sheriff's deed was ineffective to convey title to Fleischmann. In an unpublished opinion, the court of appeals affirmed the trial court's judgment quieting title in the Garlands. We granted Fleischmann's petition for certiorari to review that decision.

Rigby and Hall, as sellers, and Robert G. Garland, as buyer, entered into an earnest money agreement for the sale of lot 126 in the Tommy Creek subdivision in Garfield County on October 31, 1980. In payment for the lot, Garland transferred a diesel tractor, a truck, and a heavy-duty four-wheel trailer to Rigby and Hall. The agreement provided that Garland could substitute a different lot in the subdivision, if he later chose to do so. Within the next two months, Garland informed Rigby and Hall that he wanted to substitute lot 128 for lot 126, because his wife preferred it. At that time, lot 128 was actually owned (or was being purchased) by Rimaras, Inc., and not by Rigby and Hall personally.

On January 20, 1981, Hall sent the Garlands a copy of a warranty deed to lot 128 that had been executed and acknowledged by Rigby and Hall. Hall stated in an accompanying letter that he was "sending the original [warranty deed] to the courthouse to be recorded." He further stated, "Once the Warranty Deed is recorded the courthouse will send the original to you. This process usually takes from two to three weeks." In fact, for reasons not reflected by the record, Hall did not send the original deed to be recorded. By April 1982, the Garlands had paid Rigby and Hall in full for the lot. The Garlands purchased a cabin kit from Rigby and, with the help of their sons, built a cabin on the lot.

In 1985, Fleischmann obtained a judgment in Iron County for $17,000 against Rimaras. She docketed her judgment in Garfield County in July 1985 because the land records indicated that the corporation owned real property there. She subsequently executed against lot 128, purchasing it at a sheriff's sale on January 11,

1988, for $10,000. Prior to the sale, Fleischmann had notice of the Garlands' claim to the lot but nevertheless proceeded with the sale. Fleischmann was issued a sheriff's deed on July 12, 1988, which she promptly recorded.

On November 5, 1987, prior to the sheriff's sale, Rimaras executed a warranty deed to lot 128 to the Garlands. The deed was signed by Rigby and his wife as president and secretary, respectively, of Rimaras. He offered to deliver the deed to the Garlands in exchange for a sum of money he claimed he was owed on the cabin kit. The Garlands refused, and the deed was not delivered. On January 20, 1988, nine days after the sheriff's sale, the Garlands filed this action against Rigby, Hall, Rimaras, and Fleischmann to quiet title to the lot. The trial court found that Rimaras had no interest in the lot at the time Fleischmann's judgment was docketed in Garfield County and concluded that Fleischmann did not acquire title at the sheriff's sale.

## I. STATUTE OF FRAUDS

■ Fleischmann first contends that the oral modification of the earnest money agreement in which lot 128 was substituted for lot 126 is unenforceable because it was not in writing as required by our statute of frauds:

> Every contract ... for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing.

Utah Code Ann. § 25-5-3. We have previously held that a modification of a contract which is within the statute of frauds must also be in writing. *Allen v. Kingdon*, 723 P.2d 394, 397 (Utah 1986). Fleischmann's contention, however, must fail because she is not entitled to raise the defense of the statute of frauds to the modification. She was not a party to the contract, nor was she in privity with a party to the contract.

Professor Williston states the purpose of statutes of fraud:

> It is the intent and purpose of the Statute of Frauds to give to the party to an oral contract against whom the enforcement of the contract is sought *by the other party* the right to avail himself of the provisions of the Statute as a defense to his liability.

3 Samuel Williston, *A Treatise on the Law of Contracts* § 530, at 746 (3d ed.1960) (emphasis added). Case law supports this principle. *See Fjelland v. Wemhoff*, 249 N.W.2d 634, 638 (Iowa 1977) (if both parties admit the existence of an oral contract, it is irrelevant that a stranger objects); *Trovato v. Walsh*, 363 Mass. 533, 535, 295 N.E.2d 899, 901 (1973) (oral contracts cannot be enforced in court against one of the parties due to the strictures of the statute of frauds, "but that statute does not prevent the parties from recognizing the oral understanding by conveying the land in accordance with it"). The courts reason that "[i]f the parties to the contract as in this case are willing to waive the requirements of the statute, a stranger to the contract cannot object." *Zwaska v. Irwin*, 52 N.J.Super. 27, 33, 144 A.2d 554, 557 (1958); *Burns v. Peters*, 5 Cal.2d 619, 625, 55 P.2d 1182, 1185 (1936).

Fleischmann is not a party to the earnest money agreement, nor does she have privity with any of the parties. She is a creditor of Rimaras. As a creditor of the actual seller, Rimaras (because Rigby and Hall were selling a lot owned by Rimaras), she lacks standing to raise the defense of the statute of frauds. The Restatement (Second) of Contracts states, "[W]here one party has sold or contracted to sell property to the other and has not repudiated the sale or contract, the seller's attaching or levying creditor is a successor only to the interest the seller has apart from the Statute." Restatement (Second) of Contracts § 144 (1979). Illustration 4 from that section is helpful to our analysis: "A promises orally to sell Blackacre to B and B pays A the price. Later A incurs debts which render him insolvent. A then signs a sufficient memorandum, or conveys the land to B. A's creditor cannot set aside the con-

tract or the transfer as in fraud of creditors." *Id.* § 144 illus. 4. Thus, Fleischmann cannot raise the statute of frauds as a defense to the modification of the agreement from lot 126 to lot 128.

## II. AGENCY

It is well established in the law that a principal is liable for the acts of his agent within the scope of the agent's authority, irrespective of whether the principal is disclosed or undisclosed. The fact that an agent acts in his own name without disclosing his principal does not preclude liability on the part of the principal when he is discovered to be such by a third party who has dealt with the agent. 3 Am.Jur.2d *Agency* § 320 (1986). This is true even though the third person dealing with the agent did not learn of the existence of the principal until after the bargain was completed. *Holman–O.D. Baker Co. v. Pre-Design, Inc.,* 104 N.H. 116, 118, 179 A.2d 454, 455 (1962). The Restatement (Second) of Agency § 186 (cmt.c) (1957) states that for the purpose of proving that the agent was acting within his authority, parol evidence is admissible, even though the contract is in writing. This rule has been applied to an action to obtain specific performance of a written agreement for the sale of real estate. In *Nalbandian v. Hanson Restaurant & Lounge, Inc.,* 369 Mass. 150, 338 N.E.2d 335 (1975), the president of a corporation signed an agreement of sale without indicating that he was acting as an agent for the corporate entity which actually owned the property. The court granted specific performance against the corporation.

This rule has found application in two cases decided by this court. In *Jensen v. O.K. Investment Corp.,* 29 Utah 2d 231, 507 P.2d 713 (1973), one Max Siegel took an assignment of a lease in his own name. He was president of a corporation which conducted a business on the leased premises. Siegel died before the expiration of the term of the lease, and his son Dan succeeded him as president of the corporation. Just before the term of the lease was to expire, Dan gave notice to the lessor that he was exercising the option in the lease to renew it for another term. Sometime later, the lessor attempted to evict the corporation, asserting that the lease had been assigned to Max Siegel personally, that the corporation was not a party to the assignment, and that the corporation did not have the right to exercise the option for renewal. The corporation responded that Max had taken the assignment of the lease as an agent for and on behalf of the corporation. The lessors countered that this agency relationship was irrelevant since under the parol evidence rule, oral testimony is not permitted to establish agency where the written document contains no ambiguity as to the contracting parties.

In ruling in favor of the corporation, we relied upon the following statement of law contained in *Sumner v. Flowers,* 130 Cal. App.2d 672, 675, 279 P.2d 772, 774 (1955), which quoted the statement from *Ford v. Williams,* 62 U.S. (21 How.) 287, 289, 16 L.Ed. 36, 38 (1858). There, the United States Supreme Court stated:

> "The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein; and notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction."

Two years later, in *Zeese v. Estate of Siegel,* 534 P.2d 85 (Utah 1975), we again held that the trial court did not err in admitting parol evidence to establish that a person who took an assignment of a lease in his own individual name was acting as the agent of a corporation of which he was the president.

In the instant case, when Garland notified Hall and Rigby that he would like to substitute lot 128 for lot 126, Garland may not have known that lot 128 was actually owned by Rimaras. It appears from the record that Rimaras had purchased the lot from Stella A. Warwick, who executed a

deed to Rimaras on October 30, 1980. The deed apparently was in escrow until July 14, 1981, when it was recorded at the request of Security Title Company. Although Hall and Rigby did not disclose to Garland that they were acting as agents for Rimaras, under the rules of law discussed above, Garland could look to Rimaras for a deed when Hall and Rigby failed to provide one. The trial court made no express finding that Rigby and Hall acted as agents for Rimaras in selling lot 128 to the Garlands. However, that fact was never made an issue in the trial court. In their complaint, the Garlands alleged that they purchased the lot from "Floyd J. Rigby, Ray Hall and/or Rimaras, Inc." In answer to the complaint, Hall admitted that plaintiffs purchased the lot from "Rimaras Inc. and/or Floyd Rigby" and alleged that he (Hall) had acted as agent for Rigby and/or Rimaras. He cross-claimed against Rigby and Rimaras for indemnity against any liability he might incur to the Garlands. Rigby, who was president of Rimaras, admitted in his answer to the Garlands' complaint that he, Hall, and Rimaras agreed to sell the lot to the Garlands. Fleischmann generally denied any sale of the lot to the Garlands and relied on the land records showing Rimaras as the owner subject to Fleischmann's lien. However, Fleischmann produced no evidence to refute Rigby's and Hall's admissions that Rimaras was a seller of the lot.

■ As a general rule, a litigant is not required to prove the truth of allegations or facts admitted by his adversary. When an admission is treated as a matter of pleading, excusing the pleader's opponent from offering evidence on the point admitted, the admission is necessarily conclusive as to the facts admitted. It precludes the pleader from denying obligations implied by law from such admitted facts. 61A Am.Jur.2d *Pleading* § 179 (1981); 30 Am. Jur.2d *Evidence* § 1099 (1967); 29 Am. Jur.2d *Evidence* § 687 (1967). In *Toone v. P.J. O'Neill Construction Co.*, 40 Utah 265, 121 P. 10 (1912), we held, "If the defendant admits any fact or facts in its answer, it thereby waives proof of all facts thus admitted, and the issue to which such

admissions relate must be determined in accordance with such admissions." 40 Utah at 277, 121 P. at 13; *see also* Utah R.Civ.P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading."). Thus, as against Hall and Rigby, the Garlands were not required to put on evidence at the trial that Hall and Rigby acted as agents for Rimaras.

■ Moreover, an admission in a pleading by an owner of an interest in property is admissible against his co-defendants who claim title under him. 29 Am.Jur.2d *Evidence* § 699 (1967); Annotation, *Admissibility as Evidence of Pleadings as Containing Admissions Against Interest*, 14 A.L.R. 22 (1921). Thus, the admissions by Rigby and Hall in their answers that they acted as agents for Rimaras were admissible as evidence against Fleischmann since Fleischmann claimed title under Rimaras. Illustrative of this principle is the case of *Lockman v. Miller*, 22 So. 822 (Miss.1897). In *Lockman*, defendant Miller sold certain land on contract to the plaintiff. Miller afterward executed a deed of trust on the land to Equitable Securities Company to secure a promissory note. Miller defaulted, and Equitable purchased the property at a trust deed sale. The plaintiff brought suit to set aside the sale and to quiet title in himself. Miller, in his answer, admitted that when he executed the trust deed, he advised Equitable of the sale to the plaintiff. The court held that that statement in the answer was evidence against Equitable since Equitable stood in privity of estate with Miller as to the land. The court stated:

It is a general rule that the answer of one defendant is not admissible in evidence against his co-defendant. But there are exceptions to this rule, and one exception is where the defendants are privies in estate, so that the right of one of them devolves upon the other.

*Id.* (citation omitted).

A similar result was reached in *Porter v. Bank of Rutland*, 19 Vt. 410 (1847), a suit by a wife to compel the appropriation to

her benefit of bank stock which she claimed had been purchased with trust funds but which had always stood in her husband's name. In the husband's answer to the complaint, he admitted the allegations, and the court held that his admission was admissible in evidence against his co-defendants, who had attached the property and held it as creditors of the husband.

In summary, the admissions of Rigby and Hall in their answers were admissible evidence against Fleischmann. She produced no evidence to refute those admissions. Furthermore, there was in evidence the warranty deed dated November 5, 1987, prior to the sheriff's sale, which was executed by Rimaras to the Garlands. The deed was signed on behalf of the corporation by Rigby and his wife as president and secretary, respectively, of Rimaras. While the deed was not delivered to the Garlands because Rigby claimed money was owed to him on the cabin kit (not on the lot), the deed was additional evidence of Rimaras's recognition of its sale of the lot to the Garlands. Thus, although no express finding was made that Rigby and Hall acted as agents for Rimaras in selling the lot to the Garlands, such a finding is an implicit prerequisite to the conclusion of the trial court that Rimaras had no interest in the lot when Fleischmann's judgment was docketed. There is no other way that Rimaras could have divested itself of all interest except by its sale to the Garlands. When necessary findings are absent, we affirm the trial court if it would be reasonable to assume that it found facts from the evidence necessary to support its decision. *Mower v. McCarthy*, 122 Utah 1, 6, 245 P.2d 224, 226 (1952); *see also State v. Ramirez*, 817 P.2d 774, 387–88 (Utah 1991), and cases collected there.

## III. RECORDING ACT

■ Lastly, Fleischmann points out that when she docketed her judgment in Garfield County in 1985, as well as when the sheriff's sale was held and when the sheriff's deed was issued to and recorded by her, the land records in Garfield County showed that lot 128 was owned by Rimar-

as. Nothing appeared of record that the Garlands had any legal interest in the lot. She relies on Utah Code Ann. § 57-3-3, which provides that any document purporting to give an interest in real property is void against any subsequent purchaser if the purchaser bought in good faith for a valuable consideration, and the subsequent purchaser's document is first duly recorded. This contention is unavailing because a judgment creditor such as Fleischmann is not a bona fide purchaser. In *Kartchner v. State Tax Commission*, 4 Utah 2d 382, 294 P.2d 790 (1956), we held that a judgment lien was subordinate and inferior to a deed which predated it, even though the deed may have been recorded after the judgment was docketed or may not have been recorded at all. *See Lund v. Donihue*, 674 P.2d 107, 109 (Utah 1983); *Lach v. Deseret Bank*, 746 P.2d 802, 804 (Utah Ct.App.1987). Since Fleischmann cannot avail herself of the protection afforded bona fide purchasers under our recording statutes, it follows that her judgment lien attached only to the actual interest owned by Rimaras in the property when the judgment was docketed in 1985. At that time, Rimaras held only a bare legal title, having no beneficial interest in the property. The property had been previously purchased and paid for in full by the Garlands.

■ We are not unmindful of the fact that giving an unrecorded interest in real property priority over the lien of a judgment creditor could invite judgment debtors to "manufacture" evidence of unrecorded interests after the judgment lien attaches. A court should carefully scrutinize claims of preexisting unrecorded interests. In the instant case, the unrecorded interests of the Garlands are well supported by extrinsic evidence. The Garlands paid for the lot and took possession of it in 1982. They erected a cabin upon it and paid the property taxes every year but one. In fact, Fleischmann does not contend that the Garlands' claim to the property is tainted with any fraud or deception designed to defeat her judgment lien.

The decree quieting title in the Garlands is affirmed.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (dissenting):

I dissent. The majority here, like the majority in the court of appeals' unpublished opinion, has managed to do what appears to be equity to the Garlands, who built a cabin on property neither they nor their vendors owned, after paying the full purchase price to their vendors. The majority accomplishes this result by concluding that the two vendors, Ray Hall and Floyd Rigby, must have been acting as agents for Rimaras, Inc., a corporation they apparently controlled, when they sold the property to the Garlands in 1981. Rimaras held record title in the property from 1980 until 1987, when one of its creditors, Anna Fleischmann, foreclosed her lien on the property via sheriff's sale.

The difficulty with the majority's position is that despite the suggestion to the contrary, the Garlands never claimed that Hall and Rigby acted as agents for Rimaras, nor did they claim that Rimaras was an alter ego of Hall and Rigby, nor did the trial court find that Hall and Rigby were agents of Rimaras, nor is there any evidence in the record that allows any such finding. The majority here, like the court of appeals' majority before it, created a theory of agency, which the Garlands did not assert, and then found something in the record that purports to prove its conclusion. In my view, the record does not support a finding of agency, either by Justice Howe's discussion of ambiguous pleadings and arcane rules about attributing admissions to Rimaras, a party that never entered an appearance in the case, or by the court of appeals' reliance on a stipulation of some of the parties that they entered into only after the trial judge had made his critical and unsupported finding.

Perhaps the best backdrop for interpreting the majority opinion is a statement of the trial court judge himself. After informing the attorneys that he was going to find that the property belonged to the Gar-lands and was beyond the reach of Fleischmann, Rimaras' creditor, the judge stated:

> The Court ... finds to hold otherwise would in essence so shock the Court that the idea of giving Mrs. Fleischmann the parcel of real property with the cabin on it, the Court in all equity and fairness just couldn't do it and that's the basis of the Court's decision. So the Court finds against the Defendant. Now, I'm having a hard time getting there, to be honest. But I just feel like I just couldn't find otherwise.

When all is said and done, the trial judge's remarks could have been spoken by the majority of both the court of appeals and this court. If we were to be candid about this decision, we would admit that we are straining to uphold Judge Tibbs' decision, not on facts or law, but on some visceral notion of equity. It may be true that awarding the property and cabin to Mrs. Fleischmann would "shock the Court," as Judge Tibbs put it. But something more than sheer outrage at Rigby's and Hall's defrauding of the Garlands, which appears to be misdirected to Mrs. Fleischmann, should support the denial of title to an innocent third-party creditor who paid $10,000 for that title at a sheriff's sale.

If the majority is bent on doing some ill-defined form of equity rather than the justice the law requires, we would better serve the law, of which we are the custodians, if we dismissed the writ of certiorari. We then would leave Judge Tibbs' result in place and the law unaffected by the court of appeals' opinion, an opinion that was, probably quite wisely, designated for non-publication.