THE HIBERNIA SAVINGS BANK vs. JAMES J. BOMBA, JR.,
& another.[1]

No. 91-P-210.

Norfolk. May 21, 1993. - September 28, 1993.

Present: BROWN DREBEN. & IRELAND. JJ

*Practice, Civil*, Complaint, Dismissal. *Evidence*, Judicial admission, Plead-
ings in another action.

Allegations contained in a party's pleadings in a civil action did not consti-
tute "judicial admissions" binding on that party in a different case.
[383-384]
In an action on a mortgage, the judge's dismissal on his own motion of the
mortgage holder's complaint was vacated by this court and the matter
was remanded to give the plaintiff an opportunity to demonstrate the
existence of a genuine issue as to any material fact. [384-385]

CIVIL ACTION commenced in the Quincy Division of the
District Court Department on March 15, 1990.

The case was heard by *Lewis L. Whitman*, J., on a motion
to dismiss.

*John W. Gahan, III*, for the plaintiff.

*James J. Bomba, Jr.*, pro se.

DREBEN, J. As the holder of a promissory note of the de-
fendants, secured by a mortgage of a unit in the Sherburne
Village Condominium in Tyngsborough, the plaintiff, The
Hibernia Savings Bank (Hibernia), brought this action in the
District Court against the defendant mortgagors. The
amount alleged to be due was $59,210.79, plus accrued inter-
est, costs, and attorney's fees. After a hearing on Hibernia's
motion to secure a real estate attachment against the defend-
ants' property, the judge, sua sponte, dismissed Hibernia's

---

[1]James J. Bomba, Sr.

action.[2] The case was reported to the Appellate Division. The basis for the judge's dismissal was that certain "judicial admissions" made by Hibernia in a verified complaint filed by it in another action indicated that a moratorium on mortgage payments was then in effect and that, therefore, the notes were not in default. The Appellate Division dismissed the report, concluding that the motion judge had not abused his discretion both because the litigation was vexatious and because statements made by Hibernia in an affidavit accompanying its motion for an attachment "could be considered as an attempt to intentionally misrepresent facts to the motion judge." The filing of the affidavit "could be construed as unreasonable conduct that would warrant the sanction of dismissal." Hibernia has appealed from the dismissal of the report. We vacate the dismissal.

Our facts are taken from the report (and exhibits[3]) to the Appellate Division. On January 3, 1990, Hibernia sent to the defendants a notice of default claiming that the monthly payment due on December 1, 1989 ($619) had not been paid and stating that if that amount, plus accrued late charges of $34.58, were not paid by February 3, 1990, Hibernia would accelerate the note and foreclose on the mortgage. Hibernia filed this action on March 15, 1990 and, on the same day, filed a motion for a real estate attachment together with an affidavit in support of the motion signed by Dennis P. Myers, a vice president of Hibernia. The affidavit stated that the note had originally been given to First American Bank for Savings (First American); that it was secured by a condominium unit in Tyngsborough; that in June, 1986, First American had for value transferred the note and mortgage to

---

[2]Hibernia had originally brought seven actions against different mortgagors which were consolidated by the judge. Each of the actions was dismissed. At the time of the second hearing before this court (the first hearing was continued while the parties discussed settlement) only the action against the Bombas remained.

[3]Attached to the report was a representative example of the complaint and other papers filed in the seven actions. See note 2, *supra.* We obtained from the Quincy District Court the papers that pertained to the individual defendants in this case.

Hibernia; that thereafter First American had serviced the loan for Hibernia under a written servicing agreement; that in October, 1989, the unit owners had voted to close the condominium because of a septic system problem; that Hibernia's permission to close had not been sought by First American or the defendants prior to the vote and that Hibernia did not authorize anyone to act on its behalf at the meeting; that the note was in default; that the defendants had refused to pay; and that the defendants' unit was worthless and could not be occupied or rented. The affidavit also stated that Hibernia had brought an action against First American based on fraud and breach of contract under the servicing agreement. The last paragraph of the affidavit stated as follows:

> "To the best of my knowledge, Defendants have no valid defense to the amount claimed hereunder, and there is a reasonable likelihood that the Plaintiff will recover judgment, including costs and attorneys fees, in the amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the Defendants to be available to satisfy the judgment."

The defendants filed an opposition to Hibernia's motion for attachment to which was appended, among other material, (1) an affidavit of Ruth Moss, an owner of two units in the Sherburne Village Condominium who had given separate mortgages on each unit; (2) a letter to the defendants from Hibernia dated November 9, 1989, informing them that Hibernia was assuming the servicing of the loan that was then being serviced by First American; and (3) a verified complaint dated February 14, 1990, filed by Hibernia in the Superior Court against First American, to which was attached a document entitled "Adjustable Loan Sale and Servicing Agreement."[4]

---

[4]James J. Bomba, Sr., also claimed that he had not signed the note, and an affidavit of a handwriting expert was submitted stating that the signature was not that of James J. Bomba, Sr.

In her affidavit, dated April 3, 1990, Moss stated that throughout the three and one-half years that she had the two loans, one on each unit, her only dealings with any bank with respect to the loans had been with First American. The affidavit also set forth the events leading to the closing of the buildings. The condominium was beset with constant water and sewer problems. The developers were without funds, and the owners, most of whom had bought the units for investment purposes, were informed that sewer construction would take up to a year and would cost approximately a million dollars. After several owners indicated that they could not keep up their mortgage payments once the buildings were vacated because closing the buildings meant doing without rental income, a senior vice president of First American presented the unit owners with a proposal. The proposal was that First American would provide financing for the sewer construction and that, as part of the package, it would reduce the mortgage payments to nothing or almost nothing during the construction project. After receiving this oral proposal, the unit owners, by what Moss believed was a unanimous vote, agreed to proceed with construction. The tenants were notified that the building would close at the end of November.

Because her only contacts had been with First American, the bank servicing the loans, Moss believed that the October, 1989 financing proposal came from the bank that held her notes. The first notification to her that Hibernia held one of the notes was its letter to her dated November 9, 1989. Subsequently, Hibernia informed her that it would not abide by the terms offered by First American. First American, which also holds one of Moss's notes, has honored the proposal and has made no demand for payment on the note held by it.

As indicated, the defendants' opposition to Hibernia's motion for attachment also included Hibernia's sworn complaint against First American. Dated February 27, 1990, and filed in the Superior Court approximately two weeks prior to the filing of the complaint against the defendants in this action, the complaint against First American alleged that in April,

1986, First American had held mortgages on all of the ninety-six units of the development (except for two owned by an officer of First American); that the developers controlled the approval of loans and that usual bank lending practices had not been followed for the loans; that on or about May 7, 1986, Hibernia and First American had executed an Adjustable Loan Sale and Servicing Agreement (attached to the complaint) under which Hibernia purchased mortgages on thirty-four of the units; that First American had agreed to act as servicing agent for Hibernia and, among other things, had agreed to notify Hibernia of any damage to the property or of any facts which might impair the ability of Hibernia's mortgagors to pay their mortgages, and had also agreed not to postpone for any mortgagor any term of the mortgage without Hibernia's consent. Nevertheless, on October 12, 1989, contrary to its obligations to Hibernia under the agreement, First American had "actually encouraged" the condominium owners to close the condominium, and a unanimous vote to close had been taken by the unit holders.

Paragraphs 31 and 32 of the complaint read as follows:

"31. On or about October 18, 1989, First American represented to Hibernia that there had not been any discussions between First American and unit owners concerning reduced interest rates on the mortgages or deferred payments of the mortgage debt. However, unbeknownst to Hibernia, First American had allowed unit owners to remain delinquent on loans, held by Hibernia, despite Hibernia's instruction to foreclose. *Moreover, First American had represented to the unit owners that if the Condominium were closed, there would be a moratorium on mortgage payments until the Septic System was repaired.*

"32. On or about November 10, 1989, First American transferred the servicing of the Hibernia Mortgages to Hibernia. Prior to the transfer of servicing, First American negotiated and approved waiver of payment agreements with Hibernia's mortgagors without advising or receiving the consent of Hibernia and without

ever informing the mortgagors that Hibernia, not First American, held their loans." (Emphasis supplied.)

The servicing agreement provided that First American was to collect all payments, adjust interest rates on the loans (the loans did not have fixed interest rates), and perform other customary duties undertaken in servicing agreements.

The complaint in Hibernia's action against First American asserted several claims for relief: misrepresentation in connection with the execution of the agreement between Hibernia and First American, misrepresentation and concealment after the execution of the servicing agreement (e.g., First American concealed its representations to unit owners that no mortgage payments would be due until the septic system was repaired and also concealed its plan to close the condominium), breach of contract, breach of fiduciary duty, and violation of c. 93A.

Presented with these documents, the judge held a hearing. Counsel for the defendants pointed to the servicing agreement as showing that Hibernia was an undisclosed principal and therefore bound by First American's actions in agreeing to a moratorium on mortgage payments. See *Nalbandian* v. *Hanson Restaurant & Lounge, Inc.*, 369 Mass. 150, 153 (1975). While Hibernia argued that there was a question of fact as to whether the notes were due, it did not suggest that any evidence existed to counter the allegations it had made in its complaint filed in the Superior Court. As set forth in the report to the Appellate Division, the judge ruled that Hibernia had, in its complaint against First American, made the following judicial admissions:

"1. The plaintiff holder of the notes [Hibernia] through its authorized agent [First American] agreed that payments would be suspended until the septic system in the subject property was repaired; and

"2. The septic system had not been repaired."

The judge then concluded that, "by virtue of these judicial admissions, no payments are due on the notes and the notes are not in default." The Appellate Division, as indicated earlier, held that the dismissal was warranted because Hibernia

had engaged in unreasonable conduct by bringing multiple suits and by asserting in the affidavit in support of the motion for a real estate attachment that it knew of no valid defense available to the defendants when it had known about First American's representations that no payments would be required during construction.

Hibernia is correct that the allegations in its Superior Court complaint are not judicial admissions, that is, admissions that "conclusively determine an issue [and] relieve the other party of the necessity of presenting evidence on that issue." *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 603 n.8 (1984), citing Liacos, Massachusetts Evidence 2 (5th ed. 1981).

While under G. L. c. 231, § 87, as amended by St. 1973, c. 1114, § 190, "pleadings . . . shall bind the party making them," that provision applies only to the "trial of the case in which the pleadings were filed." *Clarke* v. *Taylor*, 269 Mass. 335, 336 (1929). The statements are admissible "if material to [an] issue" in the trial of another case, but they are not conclusive when used in this manner. *Ibid.* See also *Walcott* v. *Kimball*, 13 Allen 460, 462 (1866); *Keown* v. *Hughes*, 233 Mass. 1, 5 (1919). Thus, while the allegations of Hibernia's complaint against First American were admissible as evidence, they were not binding upon Hibernia.[5]

The defendants, recognizing that the impact of the statements was more limited than stated by the judge, argue that,

---

[5] In its brief in this court Hibernia states that its complaint in the Superior Court against First American has been amended and argues that, since pleadings that have been amended are not binding and may not be used as evidence in the same case, Liacos, Massachusetts Evidence 5 (5th ed. 1981), the original, withdrawn pleadings should have no evidentiary effect here. See *Fellows, Gamage Co.* v. *Jackman*, 296 Mass. 570, 573 (1937). We need not consider that question since not only were the amended pleadings not before the motion judge but, even more significant, the amended complaints (which the defendants — not Hibernia — have included in an appendix to their brief and of which we can take judicial notice) echo the original complaint in stating that "among the material facts known to First American and intentionally concealed from Hibernia were: . . . the representations made by First American to unit owners that no mortgage payments would be due until the Septic System was repaired."

in effect, the judge granted summary judgment to the defendants and that there was no prejudice to Hibernia in the failure to give it notice and an opportunity to file counter affidavits.

There is much force in the defendants' argument that the judge was correct in treating Hibernia's action against them as premature. As they point out, Hibernia has not indicated that it has any admissible evidence to counter the fact that it was an undisclosed principal, that First American was its agent, that the latter informed the defendants that they would not have to make mortgage payments until the septic system was repaired, and that the unit holders then voted to close the condominium. Nevertheless, because Hibernia had no notice that summary judgment was a possibility and because the judge did not purport to grant summary judgment, in the interest of giving Hibernia the opportunity to show that it does have a case, we vacate the dismissal of the report. If Hibernia, within thirty days from the date of the rescript, files affidavits or other materials claiming that it has admissible evidence showing the existence of a genuine, material issue of fact in the District Court, a judge of that court shall hold a hearing as to whether summary judgment should be granted in favor of the defendants. If Hibernia does not file such materials within such period (the District Court judge may in his or her discretion extend the period), the judgment of dismissal in the District Court shall stand on the basis that Hibernia's action against the Bombas is premature.[6]

*So ordered.*

---

[6]Although we agree with the Appellate Division that the affidavit of Hibernia accompanying the motion for an attachment appears to be highly misleading, we do not consider whether the action should be dismissed on the ground of unreasonable conduct in the absence of a fuller record on this issue. See *Monahan* v. *Washburn*, 400 Mass. 126, 128 (1987). Nothing herein, however, is intended to preclude the District Court judge from taking evidence on this issue and imposing sanctions if there are further proceedings in this matter.